446 A.2d 277

COMMONWEALTH of Pennsylvania

v.

William RYAN, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 1, 1982.

Filed May 28, 1982.

Petition for Allowance of Appeal Denied Sept. 9, 1982.

Frederick W. McBrien, Norristown, for appellant.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before WICKERSHAM, ROWLEY and McEWEN, JJ.

WICKERSHAM, Judge:

This is an appeal from an order dismissing a suppression motion and affirming sentence. We also affirm. Appellant Ryan was arrested on January 18, 1977 and charged with ten counts of receiving stolen property, possession of an automo-

bile with a defaced manufacturer's serial number, and criminal mischief in excess of $5000.00.

On May 17, 1977 appellant Ryan filed a petition to quash arrest and suppress evidence seized pursuant to two search warrants.

On June 15, 1977 Ryan's pre-trial motions were heard and dismissed; the case then proceeded to trial before Judge Robert W. Honeyman and a jury. On June 22, 1977 the jury returned a verdict of guilty on the ten informations charging theft by receiving stolen property.

Ryan subsequently filed motions for a new trial and in arrest of judgment alleging that his prior motion to suppress the evidence seized pursuant to the search warrants was improperly denied. These motions were dismissed and on August 26, 1977 appellant Ryan was sentenced to imprisonment for a term of not less than two and one-half (2½) nor more than five (5) years.

Ryan then appealed to the superior court which found that the Commonwealth failed to carry its burden of proof at the suppression hearing on the evidence seized pursuant to the search warrants. Judgment of sentence was reversed and a new trial was granted. *See Commonwealth v. Ryan*, 268 Pa.Super. 259, 407 A.2d 1345 (1979).

The Commonwealth subsequently filed a petition for allowance of appeal with the Supreme Court of Pennsylvania. The supreme court remanded the case to the superior court with an order that the superior court determine whether its prior order was intended to direct the trial court to grant appellant Ryan's motion to suppress or rather to conduct a new suppression hearing. *See Commonwealth v. Ryan*, 489 Pa. 221, 414 A.2d 37 (1980).

The superior court, in compliance with the supreme court's order, remanded the case to the trial court with instructions that it conduct a new suppression hearing. If the trial court found that the evidence seized pursuant to the search warrants should not be suppressed then the judgment of sentence would stand affirmed and if, instead, the evidence or a

part of it should be suppressed then the sentence would be vacated and a new trial held. *Commonwealth v. Ryan,* 277 Pa.Super. 262, 419 A.2d 762 (1980).

A suppression hearing was held in the Montgomery County Court of Common Pleas on November 18, 1980 before Judge Frederick B. Smillie. On May 22, 1981 Judge Smillie denied appellant Ryan's motion to suppress and affirmed the judgment of sentence. Ryan appeals from the trial court's order reaffirming the judgment of sentence.

The pertinent facts are as follows: On January 3, 1977 Detective Christopher Mower, a Philadelphia police officer, conducted an inspection of the titles and registrations of ownership of various vehicles at Lenny's Used Car Lot in Philadelphia. During his inspection Detective Mower found a 1969 Lincoln Continental on the premises with a defaced vehicle identification number. Further investigation revealed that the vehicle had been reported stolen by its owner.

Berle Fabrican, the manager of Lenny's Used Car Lot, informed Detective Mower that he had received the Lincoln from appellant Ryan, the owner of Connor's Used Auto Parts, a junkyard in Conshohocken, Pennsylvania. Fabrican was taken to the Philadelphia Police Headquarters where he called Ryan. Detective Mower spoke to Ryan during the call; Ryan stated that Mower was mistaken in his belief that the Lincoln was stolen and that he would be able to produce the title but that this would require a few days.

Later that same day Detective Mower, Officer Kane of the Philadelphia Police Department and Trooper Taylor of the Pennsylvania State Police went to appellant Ryan's junkyard and spoke to him concerning the stolen Lincoln found at Lenny's Used Car Lot. At first Ryan offered the officers permission to search his junkyard for parts of the Lincoln, however, he immediately revoked his offer when the officers indicated they would accept it.

Detective Mower and Trooper Taylor then left Ryan's junkyard and proceeded to the office of District Justice John

T. Sachaczenski where Trooper Taylor obtained a search warrant to search Ryan's junkyard for the transmission, body parts, title inspection sticker, or other identifiable parts from the stolen Lincoln automobile.

During the subsequent search of appellant Ryan's junkyard the body of the stolen 1969 Lincoln was found. Record Suppression Hearing of November 18, 1980 at 27. The police officers also noticed a yellow 1975 Volkswagen parked on the grounds of Ryan's junkyard with its serial number plate in plain view. Subsequent investigation revealed that the Volkswagen had also been reported stolen. There were also many other vehicles and parts of vehicles with missing serial numbers which the officers observed at Ryan's junkyard in the course of their search.

Trooper Taylor recited the observations made in the course of the first search in his affidavit of probable cause for a second search warrant which he sought to permit a search of all the vehicles at appellant Ryan's junkyard. District Justice Sachaczenski found probable cause for the second search warrant and it was served on Ryan on January 4, 1977. The second search of Ryan's junkyard resulted in the seizure of numerous stolen vehicle parts which gave rise to the charges Ryan was convicted of instantly.

Appellant Ryan frames his first contention of error as follows:

Did the Superior Court of Pennsylvania's directive that a new Suppression Hearing be conducted by the lower court and the conduct of the second Suppression Hearing by the Court of Common Pleas of Montgomery County improperly afford the Commonwealth a second bite at the same apple?

Brief for Appellant at 2.

The double jeopardy clause does not protect against retrial for the same offense if the conviction is set aside through the defendant's procurement. *Commonwealth v. Tabb*, 491 Pa. 372, 421 A.2d 183 (1980). Here, the second suppression hearing was held pursuant to the order of the

Superior Court which resulted from Ryan's prior appeal. Ryan procured the second suppression hearing by his appeal and he may not now complain that it was held.

Appellant Ryan frames his second contention of error as follows:

Did the Commonwealth's failure to produce the informant, Beryl [sic] Fabrican, constitute a denial of defendant's right to compulsory process?

Brief for Appellant at 2.

■ If the defense should be able to procure an eyewitness without the Commonwealth's aid, the Commonwealth need not inform the defense of the witness's whereabouts. The Commonwealth may be regarded as lacking the power to produce a witness whose testimony would be comparatively unimportant, cumulative, or inferior. *Commonwealth v. Benson*, 280 Pa.Super. 20, 37, 421 A.2d 383, 391–92 (1980).

■ An informant is not a material eyewitness when he was not present at the time and place of the search when contraband was discovered. *Commonwealth v. Moretti*, 280 Pa.Super. 167, 421 A.2d 458 (1980).

Appellant Ryan now complains that Berle Fabrican was not produced as a witness by the Commonwealth at the second suppression hearing held in the case and that its failure to do so denied Ryan his right to compel Fabrican to appear for the defense. Fabrican has disappeared since Ryan's arrest in 1977 and attempts by police officers to contact him have been unsuccessful. Record Suppression Hearing of November 18, 1980 at 20–21.

■ Berle Fabrican was not an eyewitness to either search in the instant case. Any information he provided to the police was independently verified by Detective Mower during his telephone conversation with appellant Ryan during which Ryan falsely claimed rightful ownership of the stolen 1969 Lincoln. Record Suppression Hearing of November 18, 1980 at 19. Ryan apparently knew Fabrican well enough to send him a stolen car to attempt to sell; accordingly, he is in at least as good a position to produce Fabrican as the

Commonwealth is. Additionally, Ryan presents no evidence that he even attempted to subpoena Fabrican.

Ryan frames his third contention of error as follows: Did the Commonwealth's failure to produce the informant, Beryl [sic] Fabrican, constitute a failure to meet its' burden of proof at the second Suppression Hearing? Brief for Appellant at 2.

■ In order for the issuance of a search warrant to be constitutionally valid the issuing officer must reach the conclusion that probable cause exists at the time he issues the warrant. Such a finding is to be based upon the probability, not the prima facie showing, of criminal activity. *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342 (1981).

■ In the case at bar, the Commonwealth was able to establish the probability of criminal activity at appellant Ryan's junkyard without presenting Berle Fabrican as a witness during the suppression hearing. The information that Berle Fabrican supplied to Detective Mower, that appellant Ryan claimed to be the rightful owner of the 1969 Lincoln automobile found at Lenny's Used Car Lot, was confirmed by Ryan himself during his phone conversation with Detective Mower. Record Suppression Hearing of November 18, 1980 at 19. Berle Fabrican's testimony would have been cumulative to that of Detective Mower in any event. The fact that the Commonwealth did not produce a witness who provided information corroborated by the defendant himself cannot constitute a failure to show probable cause.

Appellant Ryan frames his fourth contention of error as follows:

Should the evidence seized pursuant to the two separate search warrants have been suppressed for any one or a combination of the following reasons therefore:

(A) Failure of the Commonwealth to meet its burden of establishing the admissibility of the challenged evidence.

(B) Failure of the search warrant affidavit to establish the reliability of the informant and the underlying circumstances from which he obtained his information.

(C) Accepting an inadmissible extrajudicial statement allegedly made by defendant as the sole source of corroboration of the information given to police.

(D) The use of 'stale' information in the affidavit in support of the search warrant.

(E) Failure to comply with Pennsylvania Rule of Criminal Procedure 2002.

(F) Failure to comply with Pennsylvania Rule of Criminal Procedure 2003(c).

(G) Failure to identify with particularity those items to be seized (second search warrant).

(H) Failure of the search warrant affidavit to provide facts from which it could be concluded that the items to be seized were ever located at the premises to be searched, or more importantly, were there at the time the search warrant was issued.

Brief for Appellant at 2–3.

On appeal from the denial of a suppression motion a reviewing court must consider only the evidence presented by the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Where the suppression court's findings have ample support in the record they may not be disturbed on appeal. *Commonwealth v. Taylor*, 494 Pa. 399, 431 A.2d 915 (1981).

Probable cause to issue a search warrant has been defined as those facts reasonably necessary to show (1) that the items sought are connected with criminal activity, and (2) that the items will be found in the place to be searched. Affidavits for search warrants must be interpreted in a commonsense and realistic fashion. A magistrate's determination of probable cause should be paid great deference by reviewing courts. *Commonwealth v. Council*, 491 Pa. 434, 421 A.2d 623 (1980).

The first search warrant obtained by Trooper Taylor listed parts missing from the stolen 1969 Lincoln automobile as the items to be searched for at appellant Ryan's junkyard. There can be no question that parts of a stolen car are connected with criminal activity.

In order to establish that the missing parts of the 1969 Lincoln would be found in the place to be searched (appellant Ryan's junkyard) Trooper Taylor recited the following information in his affidavit of probable cause:

(1) The discovery of a stolen 1969 Lincoln automobile at Lenny's Used Car Lot.

(2) The statement by the manager of Lenny's Used Car Lot, Berle Fabrican, that the car had been received from Ryan, the owner of Connor's Auto Parts.

(3) Appellant Ryan's verification that he did indeed claim ownership of the Lincoln and, furthermore, would produce papers exonerating himself if given several days to do so.

(4) Ryan's invitation to Detective Mower to come to his junkyard in order to straighten out the apparent misunderstanding.

(5) The subsequent visit of Detective Mower, Officer Kane, and Trooper Taylor to Ryan's junkyard at which time Ryan initially offered to let the officers search his premises and then revoked his offer as soon as they indicated that they intended to accept it.

Based on the above-enumerated statements a reasonable man would be justified in finding a probability that the missing parts of the stolen 1969 Lincoln would be within appellant Ryan's junkyard. Ryan claimed rightful ownership of a car that unquestionably did not belong to him; he was the owner of a junkyard, an enterprise that could easily be used to dissemble stolen vehicles and a likely repository for stolen vehicle parts; he obviously knew that the police were searching for parts from the stolen 1969 Lincoln from his previous telephone conversation with Detective Mower; and he displayed guilty knowledge in revoking his previously offered consent to the search of his junkyard.

The affidavit of probable cause for the second search warrant obtained by Trooper Taylor in the instant case recited that the officers had found parts of the stolen 1969 Lincoln in appellant Ryan's junkyard and, furthermore, had seen a 1975 Volkswagen parked in plain view with its serial number visible through its windshield. A subsequent check of its registration number revealed that the Volkswagen had been stolen. The affidavit also stated that other vehicles and parts of vehicles with serial numbers missing were seen in Ryan's junkyard during the first search. Based on the above-stated information Trooper Taylor identified all vehicles, parts of vehicles, and paperwork involving those vehicles at Ryan's junkyard as items to be searched for and seized.

The affidavit of probable cause for the second search of appellant Ryan's junkyard stated more than enough facts to show that the items sought were connected with criminal activity and that those items would be found in Ryan's junkyard. During their initial search the police found one entire stolen car (the 1975 Volkswagen) and parts of another (the 1969 Lincoln); when coupled with the presence of other vehicles and parts without serial numbers at Ryan's junkyard there is no question that there was a probability that extensive criminal activity was occurring there.

Appellant Ryan also complains that the service and execution of the two search warrants was defective and asks that all evidence seized under the warrants be suppressed on that basis. Ryan can point to no specific prejudice caused to him by the allegedly defective service and executions, however. Where a defendant's rights are not prejudiced by a police officer's failure to fully comply with the requirements concerning the execution and return of a search warrant a request to suppress the evidence seized is not justified. *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979).

Appellant Ryan also alleges that Berle Fabrican, the manager of Lenny's Used Car Lot, was an informant against him and that the Commonwealth failed to establish the

reliability of Fabrican and the underlying circumstances from which he obtained his information. The information provided by Fabrican (that Ryan claimed ownership of the stolen 1969 Lincoln discovered at Lenny's Used Car Lot) was verified by Ryan himself during the course of his telephone conversation with Detective Mower. Probable cause for the searches of Ryan's junkyard was established independently of Fabrican's statements.

Ryan also alleges that the statements he made to Detective Mower during their telephone conversation should be suppressed as he was not informed of his *Miranda* rights prior to questioning. This argument is not supported by the record. In the affidavit of probable cause for the first search warrant obtained in the case it is stated that Detective Mower informed Ryan that he did not have to say anything that would incriminate himself. Bearing in mind the requirement of *Commonwealth v. Taylor, supra.*, that in an appeal from an order denying suppression we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted and that the lower court's findings may not be disturbed if they are amply supported by the record, we reject Ryan's claim.

Appellant Ryan argues that the information in the affidavits of probable cause for the search warrants was stale. Courts are reluctant to set a hard and fast rule as to what constitutes staleness of information for a search; such a determination must be made on a case by case basis. Properly recited facts indicating activity of a protracted and continuous nature make the passage of time less significant. *Commonwealth v. Stamps*, 493 Pa. 530, 427 A.2d 141 (1981).

In this case, the first search warrant was issued the same day Ryan falsely told Detective Mower that he had title to the stolen 1969 Lincoln and then refused to allow Mower and the other investigating officers to search his junkyard for parts of the Lincoln after previously inviting them to do so. Probable cause to believe that parts of the

stolen Lincoln were at Ryan's junkyard existed on the day the first search warrant was issued. Ryan's argument that Berle Fabrican's statement indicating that the stolen Lincoln had been at Ryan's junkyard approximately seven weeks before the search invalidates the first search warrant for staleness ignores the fact that probable cause for the search was established quite apart from Fabrican's assertions.

Appellant Ryan contends further that evidence seized pursuant to the search warrants should be suppressed for the Commonwealth's alleged failure to comply with Pa.R.Crim.P. 2002 which provides:

Rule 2002. Purpose of Warrant

A search warrant may be issued to search for and to seize:

(a) contraband, the fruits of a crime, or things otherwise criminally possessed; or

(b) property which is or has been used as the means of committing a criminal offense; or

(c) property which constitutes evidence of the commission of a criminal offense.

Pa.R.Crim.P. 2002.

There can be no doubt that the vehicle parts seized under the two search warrants in the instant case were both things criminally possessed and evidence of the commission of a criminal offense.

Appellant Ryan claims that the first search of his junkyard was not conducted in accordance with Pa.R.Crim.P. 2003(c) which provides that "[n]o search warrant shall authorize a nighttime search unless the affidavits show reasonable cause for such night time search." Pa.R.Crim.P. 2005(e) establishes that a nighttime search is one conducted between the hours of 10 p. m. and 6 a. m.

Ryan alleges that the first search of his junkyard was conducted at approximately 10:00 p. m. Brief for Appellant at 32. While no receipt or inventory of seized items was filed in the instant case listing the time of the search, the affidavit of probable cause for the warrant

recited that Ryan had falsely claimed ownership of the stolen Lincoln, was aware of the purpose of the officers' visit to his junkyard, and would attempt to dispose of the remaining parts now that he knew the police were investigating. If the police officers had waited until the next morning to search appellant Ryan's junkyard Ryan would have had the entire night and the cover of darkness within which to dispose of any incriminating evidence. The affidavit of probable cause, therefore, does show a reasonable cause for nighttime search.

In the second search warrant Trooper Taylor listed the items to be searched for or seized as, "All vehicles on the property [Ryan's junkyard] including those with and without serial numbers. Any paperwork involving vehicles. Any parts of vehicles with or without serial numbers."

Probable cause for such a broad search existed as the investigating officers had already found one stolen car and parts of another as well as numerous other vehicles and parts of vehicles without serial numbers at Ryan's junkyard during their first search. There was a probability that all of the vehicles, parts, and paperwork at Ryan's junkyard were involved in criminal activity as required by *Commonwealth v. Council, supra.*, and a request to search for and seize all such items was not too general.

In his final challenge to the validity of the search warrants, Ryan asserts that there was insufficient reason to conclude that the missing parts of the stolen 1969 Lincoln would be found at his junkyard on the day the first search warrant was issued. As we previously mentioned, however, Ryan falsely claimed ownership of the stolen Lincoln, offered to let the investigating officers search his junkyard for the missing parts of the Lincoln, and then revoked his offer as soon as he saw that the officers intended to accept it. Probable cause to believe that the items to be seized were at Ryan's junkyard did exist at the time the first search warrant was issued. All of Ryan's challenges to the search warrants are meritless.

Appellant Ryan phrases his fifth contention of error as follows:

Should the Commonwealth's failure to produce the affiant on either one of the search warrants render it incapable of meeting its burden of proof?

Brief for Appellant at 3.

■ As mentioned previously, probable cause for the issuance of a search warrant is based on the probability of criminal activity. *Commonwealth v. Tolbert, supra.* When a motion is made to suppress evidence the burden is on the Commonwealth to establish by a preponderance of evidence that the challenged evidence is admissible. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).

■ Both Detective Mower and Officer Kane testified as to the probable cause for the search warrants issued. The Commonwealth met its burden of showing probable cause for the searches. Our research has failed to uncover any requirement that the affiant to a search warrant testify at a suppression hearing challenging that warrant.

Appellant Ryan frames his next eight contentions of error as follows:

1. Should the defendant's Motion for Severance have been granted?

2. Should a new trial have been granted by reason of the highly prejudicial testimony, over objection of defense counsel, that defendant elected merely to exercise his constitutional right to insist that the police obtain a search warrant before exploring his premises?

3. Should certain photographs offered into evidence by the Commonwealth have been rejected?

4. Should defense counsel have been permitted to offer demonstrative evidence attacking the credibility of the Commonwealth's chief prosecutorial witness suspected of possessing an ulterior motive for pursuing defendant?

5. Did the remarks repeatedly made by the Assistant District Attorney during his summation to the jury deprive the defendant of a fair and impartial trial?

6. Did the Court mis-state the applicable law in its charge to the jury or confer an unfair advantage on the Commonwealth in reviewing the evidence?

7. Should a new trial have been granted by reason of after-discovered evidence which would clearly exculpate the defendant on at least one of the indictments?

8. Was there sufficient evidence to prove the defendant's guilt beyond a reasonable doubt?

Brief for Appellant at 3–4.

Ryan concedes that these issues were presented to the superior court in his prior appeal of this case. Brief for appellant at 37. In remanding the instant case to the superior court the supreme court specifically ordered the superior court to decide whether Ryan was to be granted a new trial or only a new suppression hearing. The superior court ordered that Ryan was to be granted only a new suppression hearing and that if the lower court found that the evidence seized under the challenged warrants should not be suppressed, then the judgment of sentence would stand affirmed. In so holding the superior court unquestionably rejected all of Ryan's non-suppression claims.

Judgment of sentence and order of court affirmed.