522 A.2d 1107

COMMONWEALTH of Pennsylvania, Appellant,

v.

John MELILLI, a/k/a John C. Melilli, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Nicholas DeSTEFANO, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Shirley DORANZO, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

John T. DEVLIN, a/k/a John Thomas Devlin, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Richard D. MASTRO, a/k/a Richard Mastro, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Samuel M. DORAZIO, a/k/a Doranzo, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Frank R. PERRI, a/k/a Frank Perri, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Louis T. PISELLI, Jr., Appellee.

Superior Court of Pennsylvania.

Argued May 30, 1986.

Filed Jan. 29, 1987.

Reargument Denied April 10, 1987.
April 10, 1987, Order Vacated and
Reinstated June 9, 1987.

Rona S. Totoki, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

F. Emmett Fitzpatrick, Jr., Philadelphia, for appellees.

Before WIEAND, BECK and JOHNSON, JJ.

WIEAND, Judge:

Presently before the Court for review in this consolidated appeal are orders of the trial court suppressing evidence obtained by the Commonwealth via pen registers and telephone intercepts, as well as physical evidence subsequently seized pursuant to warrant. The trial court's suppression orders were based upon the absence of a neutral determination that probable cause existed for the use of pen registers.

In December, 1982, on the basis of information which had been provided by confidential informants, the Commonwealth began an investigation into illegal gambling operations in Philadelphia. In January, 1983, Pennsylvania State Troopers received information from a confidential informant about an illegal numbers operation that was being conducted in Philadelphia through telephone number (215) 271–7078. Records maintained by Bell Telephone Company of Pennsylvania revealed that this number had been assigned to the defendant, Richard Mastro, at Vollmer Street, in Philadelphia. A dialed number recorder (DNR) was installed on this telephone pursuant to an order entered on January 6, 1983 by the Honorable Michael J. Conroy of the Municipal Court of Philadelphia.[1] In subsequent orders entered on February 25, March 25, and May 24, 1983, Judge Conroy authorized the continued use of the DNR on Mastro's telephone for additional thirty day periods.

---

1. A DNR is a type of pen register which attaches to a telephone line and records the numbers dialed on that particular telephone and monitors the date, time, and length of time the telephone receiver is off the hook. It does not, however, monitor the contents of any communication or record the origin of any incoming calls. See: 18 Pa.C.S. § 5702; *Commonwealth v. Beauford*, 327 Pa.Super. 253, 259, 475 A.2d 783, 786 (1984), *appeal dismissed*, 508 Pa. 319, 496 A.2d 1143 (1985). At the time that this DNR was installed, judicial authorization was not required for the installation of pen registers. However, Bell Telephone Company required law enforcement officials to present a court order before installing pen registers.

In February, 1983, law enforcement officers received further information from a second confidential informant that illegal sports bookmaking was being conducted by a man referred to as "Nick" at telephone number (215) 336-8460. Records maintained by Bell Telephone Company showed that this number had been subscribed to by defendant, Nicholas DeStefano, at 2438 Juniper Street in Philadelphia. On February 17, 1983, law enforcement officers obtained an order from Judge Conroy authorizing the installation of a pen register on DeStefano's telephone for a period of thirty days. This authorization was extended for additional thirty day periods by orders dated March 17, April 14, and May 4, 1983.

Information obtained through the pen register installed on Mastro's telephone disclosed a pattern of telephone calls made from Mastro's telephone to another telephone and transferred through call forwarding to telephone number (215) 389-8903. Bell Telephone Company's records revealed that this number had been subscribed to by Jerry DiJoseph,[2] located at 1604 South Clarion Street in Philadelphia. On March 4, 1983, Judge Conroy authorized the installation of a pen register on DiJoseph's telephone. Additional thirty day extensions were authorized on March 30 and May 4, 1983.

Based upon information obtained through these pen registers and through additional confidential informants and corroborated by independent police investigation and surveillance, law enforcement officials obtained authorization from the Honorable J. Sydney Hoffman of the Superior Court to install wiretaps on the telephones of Messrs. Mastro, DeStefano and DiJoseph. These wiretaps were installed on April 15, 1983. Interception of the telephone calls made on Mastro's and DeStefano's telephones terminated on April 26, 1983. Interception of DiJoseph's telephone conversations continued until May 4, 1983.

2. DiJoseph was not a defendant in any of the cases that form the basis of this appeal.

434

The investigation continued, and on May 9, 1983, law enforcement officials obtained search warrants for twenty-three locations, including the residences of each of the eight defendants. Pursuant to these warrants, the police seized physical evidence of corrupt organizations and illegal gambling. The eight defendants were arrested on December 8, 1983, and were charged with conspiracy, corrupt organizations and related offenses. The cases were consolidated on August 1, 1984.

All of the defendants filed pre-trial motions to suppress the evidence which had been obtained pursuant to the pen registers and wiretaps, as well as the physical evidence which had been seized pursuant to the search warrants. A hearing was held and, on September 17, 1984, the suppression court suppressed the evidence which had been obtained pursuant to the Mastro pen register. A decision regarding the remainder of the evidence sought to be suppressed was delayed until briefs could be submitted by the parties. On October 29, 1984, the suppression court ordered that this remaining evidence also be suppressed. On April 18, 1985, the suppression court filed formal findings of fact and conclusions of law.

■ In *Commonwealth v. Beauford,* 327 Pa.Super. 253, 269, 475 A.2d 783, 791 (1984), *appeal dismissed,* 508 Pa. 319, 496 A.2d 1143 (1985), a panel of this Court held that Article 1, section 8 of the Pennsylvania Constitution prohibited the installation and use of pen registers without a warrant issued upon probable cause. The Court rejected the reasoning of the United States Supreme Court in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), which had earlier held that the use of a pen register was not a search under the Fourth Amendment of the Constitution of the United States. The Commonwealth contends in the instant appeal that the suppression court erred when it applied the *Beauford* requirement of probable cause retroactively to the pen registers which had been used in the instant case because these pen registers had been installed prior to the date on which *Commonwealth v.*

*Beauford, supra,* was decided. We are constrained to disagree. "[W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question [has been] properly preserved at all stages of adjudication up to and including any direct appeal." *Commonwealth v. Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983). The *Beauford* court did not declare its ruling to be prospective only; and in the case sub judice, the issue of lack of probable cause has been properly preserved for review at all stages. Therefore, the *Beauford* rule is applicable to the facts of the instant case.

■ The Commonwealth also contends that only those defendants upon whose telephones the pen registers were installed have standing to challenge the evidence obtained from the pen registers. However, in *Commonwealth v. Beauford, supra,* this Court suppressed evidence which had been obtained through the use of pen registers as to each of six defendants despite the fact that all defendants had not had a pen register installed on their telephones. In rejecting the decision of the United States Supreme Court in *Smith v. Maryland, supra,* the Court said: "[W]e do not hesitate to say that a caller *and the person he calls* expect and are entitled to as much privacy in the fact that they are talking to one another as in what they say to each other." *Commonwealth v. Beauford, supra* 327 Pa.Super. at 266, 475 A.2d at 789 (emphasis added). From this we conclude that all defendants in the instant case have standing to challenge the evidence obtained through the pen registers which were installed on the telephones of Messrs. Mastro, DeStefano and DiJoseph.

The matter of probable cause was considered by this Court in *Commonwealth v. Doty,* 345 Pa.Super. 374, 498 A.2d 870 (1985). There we said:

> The standard for determining whether probable cause existed [for a wiretap or a pen register] is the same as that used to determine cause for search warrants. See:

*United States v. Talbert,* 706 F.2d 464, 467 (4th Cir.1983); *United States v. Falcone,* 505 F.2d 478, 481 (3d Cir.1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975). The facts contained in the affidavit for a search warrant must be such that an independent, issuing authority, exercising reasonable caution, can conclude that the items sought are connected with criminal activity and that they will be found in the place to be searched. *Commonwealth v. Council,* 491 Pa. 434, 443, 421 A.2d 623, 627 (1980); *Commonwealth v. Ryan,* 300 Pa.Super. 156, 167, 446 A.2d 277, 283 (1982). Similarly, in an application for a wiretap [or a pen register], the Commonwealth must establish probable cause to believe that (1) a person has or is about to commit one of the offenses enumerated in the statute, (2) that communications [or information] relating to that offense will be transmitted, and (3) that such communications [or information] will be intercepted on the facility under surveillance. See: *United States v. Armocida,* [515 F.2d 29, 35 (3d Cir.), *cert. denied sub nom., Conti v. United States,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975)].

*Id.,* 345 Pa.Superior Ct. at 397–398, 498 A.2d at 882.

"[P]en register applications must [also] comply with Pa.R. Crim.P. 2003(a) and (b), which require that evidence establishing probable cause for issuance of a warrant appear in writing within the four corners of the affidavits submitted to the issuing authority ... [and he] 'supported by oath or affirmation subscribed to by the affiant.'" *Commonwealth v. Beauford, supra* 327 Pa.Super. at 269 n. 7, 475 A.2d at 791 n. 7. As with all searches not falling within one of the recognized exceptions to the warrant requirement, a finding that probable cause exists must be made by a neutral judicial authority before a pen register can be installed.

The magistrate must make a judicial determination, albeit a nontechnical, common sense judgment ... as to whether probable cause exists. It is not enough for a policeman to present an affidavit to the magistrate prior to the

search which affidavit the judiciary may consider on the issue of probable cause with complete hindsight after the police have completed their search. The magistrate must *actually make* a finding of probable cause to validate the warrant before he issues it. Moreover, he must do it by written order.

*Commonwealth v. Chandler*, 505 Pa. 113, 123–124, 477 A.2d 851, 856 (1984) (emphasis added).

■ In the instant case, the orders authorizing installation and use of pen registers were not based upon findings of probable cause. At the time when the applications for the use of pen registers were made, both the affiants and Judge Conroy were operating under the belief that a warrant based upon probable cause was not a necessary condition for the use of a pen register. It was for this reason that Judge Conroy made no findings before issuing orders authorizing installation of the pen registers in question. The orders do not suggest that Judge Conroy ever considered whether probable cause existed.

■ Moreover and in any event, the affidavits accompanying the pen register applications were insufficient to show the existence of probable cause. The affidavits in support of the Mastro and DeStefano pen registers contained vague and conclusory averments in support of the reliability of the tips received from the confidential informants; and police attempts to corroborate the information had been inconclusive. The affidavit in support of the installation of the DiJoseph pen register was based entirely upon information obtained through the Mastro pen register. Absent this information, the affidavit was void of facts showing probable cause.

Despite these errors which occurred in obtaining the prosecution's evidence, the Commonwealth urges us to adopt the reasoning set forth by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and hold that evidence is not subject to suppression if law enforcement officials have acted in reasonable, good faith reliance upon authorization issued by a

neutral magistrate but which later is found to be defective because unsupported by probable cause.

In *United States v. Leon, supra,* the United States Supreme Court examined the purposes of the exclusionary rule and determined that:

"The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official conduct was pursued in complete good faith, however, the deterrence rationale loses much of its force."

*Id.* at 919, 104 S.Ct. at 3419, 82 L.Ed.2d at 696, quoting *Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182, 194 (1974). The Supreme Court concluded, therefore, that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* 468 U.S. at 918, 104 S.Ct. at 3419, 82 L.Ed.2d at 695 (footnote omitted). See also: *Ex parte State v. Crittenden,* 476 So.2d 632 (Ala.1985); *State v. Anderson,* 286 Ark. 58, 688 S.W.2d 947 (1985); *Stabenow v. State,* 495 N.E.2d 197 (Ind.App.1986); *State v. Shannon,* 472 So.2d 286 (La.App. 1985); *State v. Sweeney,* 701 S.W.2d 420 (Mo.1985); *State v. Welch,* 316 N.C. 578, 342 S.E.2d 789 (1986); *State v. Wilmoth,* 22 Ohio St.3d 251, 490 N.E.2d 1236 (1986); *McCary v. Commonwealth,* 228 Va. 219, 321 S.E.2d 637 (1984); *Patterson v. State,* 691 P.2d 253 (Wyo.1984), *cert. denied sub nom., Spoon v. Wyoming,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985). But see: *People v. Bigelow,* 66 N.Y.2d 417, 497 N.Y.S.2d 630, 488 N.E.2d 451 (1985); *Polk v. State,* 704 S.W.2d 929 (Tex.App.1986).

Suppression of the evidence obtained by the installation of the pen registers in the instant case cannot further

the purposes of the exclusionary rule. At the time when the pen registers were installed, existing law explicitly told law enforcement officials that the use of pen registers did not constitute a search. Pursuant to the Constitution of the United States, according to Supreme Court interpretation, the use of pen registers did not require a prior showing of probable cause. See: *Smith v. Maryland, supra.* According to the law then in effect, therefore, law enforcement agencies were not required to obtain a court order or warrant in order to install and make use of a pen register. Nevertheless, in order to comply with telephone company requirements, police in the instant case went further than the law required and requested from a neutral magistrate an order authorizing installation of pen registers. The magistrate, who also acted pursuant to existing law, issued an order authorizing the use of pen registers without a showing of probable cause. It was not until later that the Superior Court, applying principles of state constitutional law, outlawed the use of pen registers without a prior showing of probable cause. It seems clear, therefore, that the use of pen registers by law enforcement authorities was accomplished in good faith, in accordance with statutory authority in the Commonwealth of Pennsylvania, and consistently with procedure explicitly approved by the Supreme Court of the United States. To suppress evidence obtained under these circumstances would not further any of the purposes intended to be served by the exclusionary rule. Indeed, to deprive the Commonwealth of the use of evidence obtained in good faith and in accordance with then existing law as determined by the highest court in the land, would not only fail to serve the purposes of the exclusionary rule but would tend to defeat a substantial public interest in law enforcement.[3] Therefore, we agree with the Common-

**3.** In *United States v. Leon, supra,* the police had obtained a facially valid search warrant from a magistrate based upon facts found by the magistrate to constitute probable cause. Some of the evidence seized pursuant to the warrant was later suppressed when the district court determined that the affidavit in support of the warrant application had been insufficient to establish probable cause. The Court of Appeals for the Ninth Circuit affirmed this determination. On further

wealth that an exception to the exclusionary rule must be created which has application narrowly to situations in which law enforcement officials have acted (1) in good faith; (2) in reasonable reliance upon a procedure expressly sanctioned by existing judicial decisions; and (3) pursuant to authorization obtained from a neutral magistrate. Because those prerequisites have been met in the instant case, we reverse the orders suppressing the evidence obtained by the use of the pen registers.

We also reverse the order suppressing the evidence obtained through the telephone intercepts and the physical evidence seized pursuant to the search warrants. The suppression court's order was based upon its conclusion that absent the pen register evidence, the affidavits in support of the wiretap applications and search warrants were insufficient to establish probable cause. However, in light of our holding that the pen register evidence should not have been suppressed, it was unnecessary to discount that evidence when determining the existence of probable cause.

■ Even without a "good faith" exception in this case, we would nonetheless be constrained to reverse that part of the order suppressing evidence obtained via wiretaps installed on the telephones of Mastro and DeStefano. Without evidence obtained through the use of pen registers on their phones, the affidavits in support of the Mastro and DeStefano intercepts were nevertheless sufficient to confirm the existence of probable cause. Both affidavits contained detailed information which had been provided to law enforcement officials by confidential informants. This information was sufficient to permit a reasonable person to conclude that Mastro and DeStefano had engaged in illegal gambling

appeal, the Supreme Court of the United States reversed, holding that although the magistrate's issuance of the warrant had been erroneous, "the officers' reliance on the magistrate's determination of probable cause [had been] objectively reasonable, and [therefore] the application of the extreme sanction of exclusion [was] inappropriate." *United States v. Leon, supra* 468 U.S. at 926, 104 S.Ct. at 3423, 82 L.Ed.2d at 701. The facts in the instant case, although distinguishable from those in *Leon,* are even more compelling of the result we reach today.

activities and were continuing to do so by using telephones located at their respective residences. The only question concerning these affidavits was whether the reliability of informants' tips had been sufficiently established. We conclude that the reliability of the informants had been established.

"It is well settled that a 'tip' from an unnamed informant can properly form the basis for probable cause provided there is adequate evidence of the informant's credibility." *Commonwealth v. Miller*, 334 Pa.Super. 374, 381, 483 A.2d 498, 501 (1984). See: *Commonwealth v. Carlisle*, 348 Pa.Super. 96, 100, 501 A.2d 664, 666 (1985).

In the Mastro affidavit, the existence of probable cause was based upon information which had been provided by three confidential informants. Two of the informants had admitted being numbers writers for an illegal gambling operation. They stated that they had placed bets regularly by dialing the telephone number which police traced to Mastro. Their involvement in the gambling operation provided them with a strong basis for knowledge. Moreover, the *first* informant's reliability was adequately shown by the fact that he had previously provided law enforcement officials with information which proved to be reliable and accurate. See: *Commonwealth v. Carlisle, supra; Commonwealth v. White*, 311 Pa.Super. 146, 151–152, 457 A.2d 537, 539 (1983). The same is true with regard to the *third* confidential informant. Although the affidavit did not recite that the *second* informant had previously provided reliable information, the information provided by this informant was corroborated by the information obtained from the other two informants. Thus, it was worthy of consideration. See: *Commonwealth v. Jones*, 506 Pa. 262, 271, 484 A.2d 1383, 1388 (1984). Finally and most importantly, the statements of the informants had been against their penal interests and, therefore, could be found worthy of belief. See: *Commonwealth v. Stickle*, 484 Pa. 89, 97–98, 398 A.2d 957, 961–962 (1979); *Commonwealth v. Neidig*, 340 Pa.Super. 217, 222, 489 A.2d 921, 923–924 (1985); *Common-*

*wealth v. Yacoubian,* 339 Pa.Super. 413, 423–424, 489 A.2d 228, 233 (1985).

Similarly, the affidavit in support of the DeStefano wiretap application was based primarily upon information provided by a confidential informant. Not only was the informant involved in the gambling operation through his role as bettor and numbers writer, thereby establishing a strong basis for knowledge, but he had also provided law enforcement officials with information in the past which had proved to be reliable. His reliability and credibility, therefore, were adequately established. See: *Commonwealth v. Carlisle, supra; Commonwealth v. White, supra.*

The same cannot be said with respect to the evidence obtained through the use of the wiretap installed upon Jerry DiJoseph's telephone. The affidavit in support of this wiretap application relied exclusively upon evidence obtained through the pen register which had been installed on Richard Mastro's telephone. Without this evidence, the affidavit would have been insufficient to establish probable cause. Thus, were we not constrained to recognize a good faith exception to the exclusionary rule, the evidence obtained through this last wiretap would have to be deemed insufficient to show probable cause.

The orders suppressing evidence obtained by using pen registers and wiretaps as well as the physical evidence seized pursuant to search warrants are reversed. The case is remanded for further proceedings. Jurisdiction is not retained.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting:

I respectfully dissent from the majority's introduction of a broad good-faith exception based on its interpretation of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). I concur with the retroactive application of *Commonwealth v. Beauford,* 327 Pa.Super. 253, 475

A.2d 783 (1984), *appeal dismissed,* 508 Pa. 319, 496 A.2d 1143 (1985).

## I.  *Good-Faith Exception*

Although in principle I endorse the introduction of a narrow *Leon* good-faith exception into Pennsylvania jurisprudence, I find the instant case is an inappropriate vehicle by which to do it.

The good-faith exception has recently been enunciated by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).  In *Leon* the Court applied the good faith exception to admit evidence discovered pursuant to a search warrant not supported by probable cause on the ground that the police who conducted the search had reasonably relied on the issuance of the warrant by a neutral magistrate.  In *Sheppard,* the Court concluded that the exclusionary rule does not require the suppression of evidence seized by law enforcement officials acting in objectively reasonable reliance on a technically defective warrant.  In both of those cases, the issuing authority made an objective assessment based on established standards of whether there was probable cause to support the warrant.  In hindsight it was determined that probable cause did not support the warrant in *Leon,* and although probable cause did support the warrant in *Sheppard,* the warrant was defective because it failed to specify with particularity the kind of items that the search was aimed at uncovering.

In the case sub judice the search involved placing a pen register on the telephone of the appellant.  Under the applicable law at the time, the police could legally install a pen register on their own initiative.  No warrant was required as a precondition to the installation.  *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Therefore, no mandated standard existed by which the issuing authority could assess whether to permit the installation of the pen register.  In the case sub judice the issuing authority issued the warrant as an accomodation to

the telephone company because the company refused to install the pen register without judicial approval.

It appears that the issuing authority in the case sub judice rubber-stamped the request by the police without bringing to bear its independent judgment. I would find the good-faith exception inapplicable because the facts in this case do not support it. Without standards for an independent assessment by the issuing authority of the pre-search actions of the police, the object of a search becomes vulnerable to unsupervised, and perhaps overzealous, law enforcement activity even if performed in good faith. No safeguard exists that the neutral issuing authority assessed the information presented by the police. No pre-search record exists by which a reviewing court can assess the grounds on which the authorization was approved.

Since no warrant was required in this case, the majority's opinion leads dangerously close to approving a good-faith exception for warrantless searches.

The *Leon* and *Sheppard* doctrine creates a narrow good-faith exception, where the issuing authority has assessed the presearch information. To extend the doctrine to situations where the issuing authority is a rubber stamp or to situations where no warrant is necessary would grant the police too broad discretion. In determining whether the police acted in good faith in relying on the authorization, the reviewing court would have to rely on after-the-fact documentation by the police. After the fact, the police would have to assemble a case in favor of good faith. In most cases, the police would not have the pre-search opportunity to document good faith in searches without a warrant because most warrantless searches are conducted in emergency situations. Also, in situations where search-and-seizure doctrine is unclear, the police could rely totally on their interpretation to support a good-faith exception.

Extension of the good-faith exception to warrantless searches would begin seriously to erode the established body of search and seizure law and I fear the majority's opinion leads to that end.

## II. *Retroactivity*

Although I agree that the rule in *Commonwealth v. Beauford,* 327 Pa.Super. 253, 475 A.2d 783 (1984), *appeal dismissed,* 508 Pa. 319, 496 A.2d 1143 (1985), is retroactive, I do not agree with the majority's analysis of the issue of retroactivity. The majority bases its analysis solely on *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146 (1983). *Cabeza* requires that all decisions in criminal cases be retroactive absent a specific statement in the opinion rendering it prospective only. As *Beauford* declines to determine its own retroactivity, the *Cabeza* rule would automatically render it retroactive. Although the *Cabeza* rule establishes a strong presumption of retroactivity, it should not be the end of retroactivity analysis. The rule is too broad. Our Supreme Court has begun to limit its breadth. *Commonwealth v. Gillespie,* 512 Pa. 349, 516 A.2d 1180 (1986). Rather than adopting a standard of analysis, the rule is conclusory. In providing clear direction as to applicable law, *Cabeza* hampers the court's discretion and deprives the court from making equitable considerations. It sacrifices fairness to certainty.

The preferable standard was recently enunciated by Justice Papadakos in his concurrence in *Commonwealth v. Harper,* 512 Pa. 155, 516 A.2d 319 (1986). Justice Papadakos refers to *Cabeza* as our present rule of retroactivity in criminal cases. Yet, realizing that *Cabeza* is not a tool for analysis, he reiterates the *Stovall* standard:

> The criteria to be employed in determining whether a newly adopted rule should be applied retroactively are: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno,* [388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967)].

*Harper,* 512 Pa. at 162, 516 A.2d at 323 (Papadakos, J. concurring).

Pursuant to *Harper* and *Stovall,* I review the countervailing considerations. The purpose of the new rule requiring

446

search warrants for use of pen registers is to safeguard the important state constitutional right against unreasonable searches. The reliance by law enforcement authorities on the previous standard which was established in 1979 in *Smith v. Maryland,* is clear from the facts in the case sub judice. Before *Beauford* was decided, law enforcement officials used pen registers without court authorization. However, it is not possible to assess the extent of this reliance. Therefore, we cannot determine the impact that retroactive application of the new requirement or standard will have on the administration of justice. Clearly, retroactivity will cause the suppression of evidence in some cases. Since retroactivity analysis in criminal decisional law begins with a strong presumption in favor of retroactivity and since the purpose of the new rule is of constitutional dimension, I agree that the *Beauford* rule should have retroactive application.

Although I find it is proper to apply the *Beauford* principle retroactively, I conclude that the good-faith exception is inapplicable. I would, therefore, affirm.