516 A.2d 319

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Wesley Leon HARPER, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 24, 1986.

Decided Oct. 16, 1986.

Eric B. Henson, Deputy Dist. Atty., Robert B. Lawler, Chief/Appeals Div., Gaele M. Barthold, Chief/Prosecution Appeals, Ann C. Lebowitz, Philadelphia for appellant.

Frank A. Mayer, III, Cheltenham for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PER CURIAM.

We hold that our decision in *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981), does not have retroactive application beyond those cases which were on direct appeal when *Tarver* was decided, for the reasons set forth in Mr. Justice Papadakos' opinion in this case. Since *Tarver* is not applicable to the present case, the majority does not reach or decide the issue of whether *Tarver* should be overruled on its merits. Mr. Justice Larsen, Mr. Justice McDermott and Mr. Justice Papadakos would overrule *Tarver* for the reasons stated in the opinion of Mr. Justice Papadakos.

The order of Superior Court, 340 Pa.Super 619, 490 A.2d 11, is reversed and sentences are reinstated.

PAPADAKOS, J., files a concurring opinion in which LARSEN and McDERMOTT, JJ., join.

PAPADAKOS, Justice, concurring.

This is an appeal by the Commonwealth of Pennsylvania (Appellant) from the January 25, 1985, Order of the Superior Court vacating Appellee's Judgment of Sentence for two robberies and a burglary, and reversing the Order of the Court of Common Pleas of Philadelphia County, which denied Post-Conviction relief.

Appellee, Wesley Leon Harper, was found guilty of murder of the first degree,[1] burglary, and two counts of robbery on November 21, 1973. These convictions resulted from the October 29, 1969, robbery of the Philadelphia National Bank in Northeast Philadelphia and the shooting death of the bank security guard, George Bordner, during the burglary and robbery. Post-verdict motions were denied on July 31, 1975. Appellee was sentenced to life imprisonment for the murder of the first degree conviction and to concurrent ten to twenty year sentences on each of the robbery and burglary convictions. On direct appeal, this Court affirmed the murder of the first degree conviction. *Commonwealth v. Harper*, 479 Pa. 42, 387 A.2d 824 (1978).

On February 7, 1979, Appellee filed a *pro se* petition under the Post-Conviction Hearing Act.[2] Counsel was appointed and an amended petition was filed on December 11, 1981 wherein, among the other contentions raised, Appellee for the first time asserted a violation of double jeopardy on the basis of his concurrent sentences for two robberies and a burglary. After a hearing before the Honorable Edward J. Blake, relief was denied on December 2, 1982. A Superior Court panel subsequently reversed Appellee's concurrent sentences for the robberies and burglary under the authority of our decision in *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981). Although *Tarver* was decided well after Appellee's convictions became final, the Superior Court determined that *Tarver* should have full retroactive effect.

1. At the time of trial, the applicable statute relating to first degree murder provided:

   All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree. All other kinds of murder shall be murder in the second degree. Act of June 24, 1939, P.L. 872, § 701, December 1, 1959, P.L. 1621, § 1.

2. 19 P.S. § 1180–1, et seq. (Supp.1978–79) (Repealed April 28, 1978) now 42 Pa.C.S. § 9541, et seq.

Presented for consideration in this appeal is whether our decision in *Tarver* should have retrospective application to proceedings, such as those here involved, which transpired before the announcement of the decision (in this case, six (6) years before). In addition to the retroactivity question, the Commonwealth urges that we take this opportunity to reexamine *Tarver*, in light of recent United States Supreme Court decisions, and our own recent decisions which make plain that the Double Jeopardy clause relied upon in *Tarver* plays no role in multiple sentencing analysis. The Commonwealth asserts that these decisions indicate that the proper focus of the question of whether to permit multiple sentencing in the felony-murder area is upon legislative intent, and that the *Tarver* rule should be abandoned. I begin the analysis with the question of whether the Superior Court erred in giving *Tarver* retroactive effect.

The Commonwealth first argues that in awarding retroactive sentencing relief, the Superior Court overlooked our contrary controlling precedent and misread our *Tarver* decision, producing the illogical result of automatic application of the *Tarver* holding to all felony-murder cases of whatever vintage.

I agree that our *Tarver* decision should not have retroactive application. For the reasons set forth herein, the Superior Court's vacation of Appellee's concurrent sentences for two robberies and one burglary should be reversed.

On July 31, 1975, Appellee was sentenced to life imprisonment on his conviction of first degree murder, to run concurrently with a ten to twenty year term for his conviction of burglary, and two ten to twenty year terms for two counts of aggravated robbery. At the time of the commission of these crimes, the crime of first degree murder was governed by the Penal Code of 1939, which encompassed both willful, deliberate and premeditated killing as well as felony-murder involving five enumerated felonies, including robbery and burglary. Appellee's first degree murder conviction was of the felony-murder type, based on the underly-

ing felonies of burglary and aggravated robbery. We affirmed Appellee's conviction of murder of the first degree on direct appeal three years prior to our decision in *Tarver*. However, the issue of illegal sentences was never raised on direct appeal.

The controlling law, at the time *Tarver* was decided, was *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977). *Sparrow* held that a murder committed in the course of a robbery was a distinct crime from the underlying robbery, and since there was no merger of the crimes, there was nothing improper about separate sentences for each crime. Thus, no double jeopardy problem was posed, because robbery and murder were separate offenses. *Sparrow* was overruled by *Tarver*, which for the first time applied double jeopardy principles to felony-murder sentencing.

The rule espoused in *Tarver* was essentially that for double jeopardy purposes, the underlying felony in a felony-murder prosecution is the "same offense" as the murder; therefore, sentences for both the murder and the underlying felony are prohibited. As in the instant case, Tarver was convicted under the Penal Code of 1939 of murder of the first degree, and also of the underlying felony which was aggravated robbery. A life sentence was imposed on the first degree murder conviction and a ten to twenty year consecutive sentence on the aggravated robbery conviction. On P.C.H.A. appeal, this Court vacated the aggravated robbery sentence on the grounds that the underlying felony of robbery was a constituent offense of the felony-murder, and, therefore, double jeopardy prevented the trial court from exceeding its legislative authority and imposing multiple punishments. We held that since the Appellant had raised the sentencing issue at all stages of the proceeding, and since we had not previously ruled on the merits of the claim, it was properly preserved in his P.C.H.A. appeal. Thus, Tarver was entitled to have his robbery sentence vacated where he also received a life sentence for felony-murder. We very carefully pointed out in *Tarver* that the

Appellant was entitled to relief in his P.C.H.A. appeal because he had preserved the issue at all stages of the proceeding. Since Tarver's sentence was legal when imposed, such analysis would have been irrelevant had we intended our ruling to be retroactive. We have consistently declined to modify sentences retrospectively in P.C.H.A. appeals by similarly situated defendants. *Commonwealth v. Tabron,* 502 Pa. 154, 465 A.2d 637 (1983); *Commonwealth v. McKenna,* 498 Pa. 416, 418 n. 2, 446 A.2d 1274, 1275 n. 2 (1982); *Commonwealth v. Smallwood,* 497 Pa. 476, 442 A.2d 222 (1982); *Commonwealth v. Rashed,* 496 Pa. 26, 436 A.2d 134 (1981); and *Commonwealth v. James,* 493 Pa. 545, 548, 427 A.2d 148, 149 (1981).

In the instant case, Appellee concededly did not raise the sentencing question at his 1975 sentencing for his 1969 felony-murder. Nor did he raise the question at *any* stage on direct appeal. Hence, the Commonwealth asserts that under long-standing law Appellee is not entitled to relief, because the issue was not properly before the Superior Court. Appellee responds to this *waiver* argument by relying on our decision in *Commonwealth v. Walker,* 468 Pa. 323, 362 A.2d 227 (1976), for the proposition that a claim of illegality of sentence cannot be waived. While this contention is correct, it is not helpful to Appellee, for the following reasons.

At the time of Appellee's trial and at imposition of sentence, Appellee's sentence was legal. In fact, Appellee never raised this issue until after our decision in *Tarver,* which was long after his judgments of sentences were final. Hence, he is not entitled to relief unless *Tarver* is made fully retroactive. Appellee asserts that he raised the issue of ineffectiveness of counsel in his P.C.H.A. Petition and in his appeal to the Superior Court, ascribing counsel's failure to contest his multiple sentences earlier as evidence of ineffectiveness. This contention is clearly without merit. As previously stated, Appellee's sentences being legal when imposed, counsel will not be considered ineffective for failure to assert a meritless claim. *Commonwealth v. Stoyko,*

504 Pa. 455, 475 A.2d 714 (1984). Nor will we hold counsel ineffective for failure to foresee changes in the law. *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).

The Commonwealth urges that since Appellee's sentences on the underlying felonies were final some six years before the *Tarver* decision, the trial court could not have "violated" the *Tarver* rule almost a decade before its articulation. Further, as a result of such an unwarranted and illogical extension of *Tarver*, any defendant convicted and sentenced for both felony-murder and the underlying felony—and there are hundreds in this State's prison system—need only file a collateral attack to receive immediate and automatic relief from the Superior Court. The Superior Court panel erred in several major respects in its retroactive application of *Tarver*.

By its own terms, *Tarver* made clear that this decision was not to be applied retroactively. Moreover, in *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983), this Court stated our present rule of retroactivity in criminal proceedings:

> ... [W]e hold that where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases *where the issue in question is properly preserved* at all stages of adjudication up to and including any direct appeal. (Emphasis added.)

*Id.*, 503 Pa. at 233, 469 A.2d at 148. It is obvious that the Superior Court gave no consideration to this controlling principle but instead relied on its own recent decision in *Commonwealth v. Gillespie*, 333 Pa. Superior Ct. 576, 482 A.2d 1023 (1984), which likewise ignored *Cabeza*'s governing principles, and granted complete retroactive *Tarver* relief. "The formal purpose of Superior Court is to maintain and effectuate the decisional law of this Court as faithfully as possible." *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985). I would caution our intermediate

appellate courts to be aware of the pronouncements of this Court.

A review of our post-*Tarver* decisions reveals that we have not applied *Tarver* retrospectively on P.C.H.A. appeals to felony-murder cases already final at the time it was decided. Rather, *Tarver* has been applied only where direct appeal was pending at the time *Tarver* was decided and where the issue was preserved. *See, Commonwealth v. Colon*, 496 Pa. 650, 437 A.2d 1228 (1981); *Commonwealth v. Upsher*, 495 Pa. 620, 435 A.2d 178 (1981).

Superior Court's retroactive application of *Tarver* is clearly not in accord with the law as enunciated by this Court or the United States Supreme Court. *See, Commonwealth v. Cabeza, supra; Commonwealth v. Geschwendt*, 500 Pa. 120, 454 A.2d 991 (1982); *Commonwealth v. Brown*, 494 Pa. 380, 431 A.2d 905 (1981); *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

> [T]he retroactivity or non-retroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own background of precedent, and its own impact upon the administration of criminal justice, and the way in which these factors combine must inevitably vary with the dictate involved.

*Johnson v. New Jersey*, 384 U.S. 719, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966). The criteria to be employed in determining whether a newly adopted rule should be applied retroactively are: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno, supra*, 388 U.S. at 297, 87 S.Ct. at 1970.

Generally, where the purpose of a new constitutional doctrine is to cure a defect in the criminal procedure which

impairs the truth finding function, and thus raises doubt as to the validity of the guilty verdict, the rule will be given full retroactive effect. *See*, e.g., *Berger v. California*, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969); *Arsenault v. Massachusetts*, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); *McConnell v. Rhay*, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); *Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). In the context of the application of double jeopardy principles, however, the reliability of the truth determining process is not at issue. This weighs against giving full retroactive effect to the *Tarver* rule.

In *Tarver*, we did not specifically address the purposes to be served by the new rule that felony murder and its underlying felony are the same offense for sentencing purposes. Prior to *Tarver*, multiple sentences for felony-murder and the underlying felony were not only permitted, but were the law, since Pennsylvania adopted the felony-murder rule in 1794. The 1981 decision was a significant departure from prevailing law; thus there was considerable justification for the trial judge's reliance on the existing law in 1975 when these sentences were imposed. In view of this reliance, in the instant case and hundreds of other cases like it throughout the Commonwealth, the effect of a retroactive application of *Tarver* on the administration of criminal justice would be considerable. The Commonwealth points out that the unfairness of retroactive nullification of a sentencing decision is most apparent when the actual sentences imposed in the older cases are examined. For example, in the instant case, the trial judge, unable to anticipate the *Tarver* change in law, suspended sentences on two bills, conspiracy, and the weapons conviction, a decision he obviously would not have made if he could have forecast *Tarver*.

Appellee, while conceding that the United States Constitution contains no specific clauses as to the retroactive application of constitutional interpretations by Courts, nevertheless contends that retroactive application of *Tarver* is mandated because the constitutional guarantee against double

jeopardy is involved. Appellee relies in part on *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d (1973), to support his position. *Robinson v. Neil* draws a distinction between what it calls the *Linkletter* line of cases, *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1966),[3] and the retroactivity of a Double Jeopardy issue. Appellee asserts that the *Linkletter* analysis is inapplicable in the instant case because it has been traditionally applied to procedural-type decisions only. *Robinson v. Neil, supra,* states that the double jeopardy guarantee is significantly different from procedural guarantees analyzed by *Linkletter,* in that the practical result of the double jeopardy clause is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial. *Robinson,* 409 U.S. at 509, 93 S.Ct. at 878. However, Robinson does not control the instant case, because it discusses a totally different aspect of double jeopardy than arises in the instant case.

In summary, for all of the aforementioned reasons, I would hold that the Tarver rule should not be given retroactive effect beyond *Commonwealth v. Starks,* 304 Pa. Superior Ct. 527, 450 A.2d 1363 (1982), which afforded relief on *Tarver* grounds to those defendants whose cases were on direct appeal when *Tarver* was decided.

I now address the issue of whether in light of recent decisions by this Court and the United States Supreme Court we should reverse our *Tarver* decision. The Commonwealth asserts that the double jeopardy clause relied upon in *Tarver* plays no role in multiple sentencing analysis, and that the proper focus of the question of whether to permit multiple sentencing in the felony-murder area is upon legislative intent.

**3.** In *Linkletter* the Supreme Court concluded "that the constitution neither prohibits nor requires [that] retrospective effect be given to any new constitutional rule" 381 U.S. at 629, 85 S.Ct. at 1737 and that the courts must now "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." 381 U.S. at 629, 85 S.Ct. at 1738.

In *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), the United States Supreme Court succinctly set forth the protections afforded by the Double Jeopardy Clause: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." It is this third protection that was at issue in *Tarver* and is also at issue in the instant case. Where multiple punishment is involved, the Double Jeopardy Clause acts as a restraint on the prosecutor and the Courts, not the legislature. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

The Double Jeopardy Clause prohibits a court from imposing more punishment than intended by the Legislature. "[T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 1436, 63 L.Ed.2d. 715 (1980). A more recent articulation of this principle is found in *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984):

> In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy— protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, *United States v. Wiltberger*, 18 U.S. (5 Wheat) 76, 93, 5 L.Ed. 37 (1820), the question under the Double Jeopardy Clause whether punishments are "multiple" is essentially one of legislative intent, see *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

In *Tarver*, we resolved the question of whether the robbery was the same offense as the felony murder by

applying the *Blockburger* test: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). "The assumption underlying the rule is that [the legislature] ordinarily does not intend to punish the same offense under two different statutes." *Whalen v. United States, supra,* 445 U.S. 691–92, 100 S.Ct. 1437–38. However, "[t'he *Blockburger* test is a 'rule of statutory construction' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, *for example,* there is a clear indication of contrary legislative intent." *Missouri v. Hunter*, 459 U.S. 359, 367, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983), citing *Albernaz v. United States*, 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981).

In *Missouri v. Hunter, supra,* after reviewing its prior decisions in *Whalen* and *Albernaz,* the Court stated:

> Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear.... Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Missouri v. Hunter, supra,* 459 U.S. at 368, 103 S.Ct. at 679.

The United States Supreme Court went even further in *United States v. Woodward,* 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985) (*per curiam* opinion), holding that in absence of evidence of Congressional intent to *disallow* separate punishment for two different offenses (which arguably could be considered the "same offense" under the *Blockburger* test), consecutive sentences were permissible where defendant's convictions for making a false statement, 18 U.S.C. § 1001, and a currency violation, 31 U.S.C. § 1058, were based on the same conduct. The court reasoned that Congressional intent to allow punishment under both statutes was shown by the fact that the statutes "are directed to separate evils." *Woodward,* at 109, 105 S.Ct. at 613. Under a separate evils analysis, felony-murder and robbery are clearly not the same offense.

A review of the cases upon which our *Tarver* decision was based reveals that all of the cases involved successive prosecutions. *See, Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1975); *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). Successive prosecution cases involve the core values of the Double Jeopardy Clause. In such cases, the Double Jeopardy Clause protects the individual's interest in not having to "run the gauntlet" twice, in not being subjected to "embarrassment, expenses and ordeal," and in not being compelled "to live in a continuing state of anxiety and insecurity," with enhancement of the "possibility that even though innocent he may be found guilty." *Green v. United States,* 355 U.S. 184, 187, 190, 78 S.Ct. 221, 223, 225, 2 L.Ed.2d 199 (1957). As noted by the Michigan Supreme Court recently, in a scholarly study of multiple punishment and the Double Jeopardy Clause, when the issue is purely one of multiple punishments, without the complications of a successive prosecution, different interests are involved. The right to be free from vexatious proceedings simply is not present.

The only interest of the defendant is in not having more punishment imposed than that intended by the Legislature. *People v. Robideau,* 419 Mich. 458, 355 N.W.2d 592, 603 (1984).

My review of the United States Supreme Court cases reveals an inconsistency in approach and application of the *Blockburger* test. Although the test is simply stated, it is not susceptible of easy application or interpretation. Different results obtain depending on the statutes involved and whether one looks only to the statutory language in the abstract, or whether one looks to the facts of the case, and the evidence used to prove the crimes charged. When one of the two statutes involved is a necessarily lesser included offense of the other, application of the test will always raise the presumption that the statutes involve the same offense, because the lesser offense will never have an element not required by the greater offense.

The more troublesome area is the situation which occurred in *Tarver,* and with which we are faced in the instant case, the so-called compound and predicate crimes. In applying the test, if one looks only to the statutory language, the compound and predicate crimes are separate offenses under the *Blockburger* test. But, if one looks to the facts of the case and the evidence required to prove the crimes charged, proof of the predicate crime is necessary to establish the compound crime and under the test the compound and predicate crimes are presumptively the same offense. Both approaches to the *Blockburger* test have been employed for reasons not always ascertainable. Compounding the confusion is a failure to address and distinguish the different interests involved in successive-prosecution versus single-prosecution cases.

Given the difficulties and unworkability of the *Blockburger* test, and the fact that it is virtually of no help in determining legislative intent—which is clearly the test to be applied in multiple punishment cases—I believe that the *Blockburger* test should be abandoned. I would instead use traditional means to determine legislative intent: the subject, language, and history of the statutes.

The Commonwealth correctly asserts that our decision in *Tarver* effected a major change in the law. Since 1794, when Pennsylvania first adopted the felony-murder rule, trial judges felt free to sentence particularly heinous criminals to concurrent or consecutive sentences for the felony as well as to impose the mandatory life sentence. I am mindful of the fact that legislatively-linked compound and predicate crimes are not subject to an easy analysis, and that determining legislative intent is sometimes a difficult task. However, I cannot use this difficulty as a basis for retaining a test that reveals little or nothing about legislative intent.

The Legislature was aware of the history of the felony-murder rule when it enacted the Crimes Code of 1972. Yet, aside from separating felony-murder into a different degree of murder, the Legislature did not significantly change the homicide definitions as they had existed in the 1939 Penal Code. Thus, there is nothing to suggest that in 1972 the Legislature intended to change either the definitions or the sentences for the various degrees of homicide from pre-existing practice. Under the present Crimes Code, the Legislature has set forth specific sections precluding multiple punishment only in the most limited circumstance. See 18 Pa.C.S. §§ 906, 3502.[4]

The stated purpose of the Crimes Code is to prohibit conduct which threatens both individual and public interests, and to provide fair warning both of the conduct

**4.** Section 906 provides:
   § 906. Multiple convictions barred.
   A person may not be convicted of more than one offense defined by this chapter for conduct designed to commit or to culminate in the commission of the same crime.
   1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973.
   Section 3502 provides in relevant part:
   (d) Multiple convictions.—A person may not be convicted both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree. 1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973.

deemed unlawful and the sentence that may be imposed for each offense, 18 Pa.C.S. § 104.[5]  Our decisions since *Tarver* have made clear that it is the defendant's criminal offenses, each of which represents a distinct statutory violation, and not the number of acts giving rise to these offenses which are punishable.  *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984); *Commonwealth v. Bostic*, 500 Pa. 345, 456 A.2d 1320 (1983); *Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246 (1982).  These cases also make it clear that legislative intent is controlling.

In *Bostic, supra,* we approved a sentencing scheme which imposed, in addition to a sentence for armed robbery, an additional sentence for use of a firearm during a robbery. In doing so, we recognized the Legislature's authority to prescribe cumulative sentences under two statutes regardless of whether those two statutes proscribe the same conduct under *Blockburger.*

In *Frisbie, supra,* we also recognized that the Legislature is empowered to impose multiple punishments for the same act, noting that where the Legislature has intended to preclude multiple punishments for multiple injuries resulting from a single act it has expressly done so.  *Id.,* 506 Pa. at 466, 485 A.2d at 1100.  Since there is no multiple punishment prohibition in the felony-murder or robbery statutes, and since the general purpose of the Crimes Code contemplates that a sentence will be imposed for each offense, there is nothing to indicate a legislative intent to preclude

**5.**  Section 104 of the Crimes Code provides:
§ 104.  Purposes.  The general purposes of this title are:
(1) To forbid and prevent conduct that unjustifiably inflicts or threatens substantial harm to individual or public interest.
(2) To safeguard conduct that is without fault from condemnation as criminal.
(3) To safeguard offenders against excessive, disproportionate or arbitrary punishment.
(4) To give fair warning of the nature of the conduct declared to constitute an offense, and of the sentences that may be imposed on conviction of an offense.
(5) To differentiate on reasonable grounds between serious and minor offenses, and to differentiate among offenders with a view to a just individualization in their treatment.  1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973.

concurrent sentences. Further, prior to *Tarver*, at the time the 1972 Crimes Code was enacted, multiple sentences were the law.

The Commonwealth also argues that it is inconceivable that the Legislature intended that a defendant who has committed a felony-inspired killing should then be permitted to rifle through and steal all of the victim's belongings with total immunity. This, however, is the effect of our *Tarver* holding. I do not believe that such a result was intended by the Legislature. Accordingly, to the extent that *Tarver, supra,* is inconsistent with this opinion, I would expressly overrule it.

LARSEN and McDERMOTT, JJ., join in this concurring opinion.