542 A.2d 1004

**COMMONWEALTH of Pennsylvania**

v.

**Louis RIGGINS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1988.

Filed May 24, 1988.

244

James S. Bruno, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WIEAND, MONTGOMERY and HESTER, JJ.

WIEAND, Judge:

Louis Riggins was tried by jury in October, 1974, and was found guilty of first degree murder and conspiracy. Post-trial motions were filed and denied, and Riggins was sentenced to life imprisonment on the murder conviction and to a consecutive five to ten year term of imprisonment for conspiracy. On direct appeal, the Supreme Court affirmed the judgment of sentence. In September, 1986, Riggins filed a pro se petition under the Post Conviction Hearing Act (P.C.H.A.). Counsel was appointed, and an amended P.C.H.A. petition was filed. Upon motion of the Commonwealth, the amended P.C.H.A. petition was dismissed without hearing. On appeal from the order of the P.C.H.A. court, Riggins raises several issues challenging the effectiveness of his trial and appellate counsel. Specifically he argues that:

A. Trial counsel was ineffective for failing to object to the District Attorney's remarks regarding the presumption of innocence and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness.

B. Trial counsel was ineffective for failing to object to the Commonwealth presentation of testimony regarding the fact appellant was a member of the black Muslim religion and appellant [sic] counsel was ineffective for failing to raise this issue in appellant's appeal.

C. Appellant was deprived of a fair trial by the testimony that he had previously been in jail and that trial counsel and appelalnt [sic] counsel were ineffective for failing to properly preserve this issue on appeal.

D. Trial counsel erred in permitting an exhibit containing the dying declaration to be admitted into evidence as his failure to object allowed the exhibit to be sent out with the jury during their deliberations and appellate counsel was ineffective for failing to raise this issue on appeal.

E. Trial counsel erred in failing to object to the trial court's expressing its opinion in the charge to the jury that there was evidence that would tend to establish that appellant solicited, agreed, participated and performed acts which caused the death of the victim.

Riggins has also filed a pro se supplemental brief in which he challenges the effectiveness of his appointed P.C.H.A. counsel. Finding no merit in any of Riggins' contentions, we affirm the order of the P.C.H.A. court.

The evidence which led to Riggins' conviction was summarized by the Supreme Court as follows:

The victim's mother, accompanied by a co-worker, Mrs. Young, stopped by the home of her two daughters late at night to see that all was well. She discovered a large cooking knife and bloody paper towels on the kitchen countertop, and at the same time heard the victim calling faintly from the basement. Upon going down to the basement, the mother found the victim lying in a pool of blood with numerous stab wounds to her right arm, chest and throat. In answer to her mother's question as to what caused her injuries, the victim clearly and repeatedly named the appellant and two of appellant's regular companions. The mother's co-worker came down the stairs and heard the same three people named as the assailants.

The mother called the police and an emergency patrol wagon arrived within minutes. The senior police officer found the victim in a severely wounded state and heard her say repeatedly that she was dying. When questioned, she replied, "They stabbed me." She also stated there had been three assailants. The police officer then

grabbed the nearest available thing to write on, a napkin. The victim gave him the same three names she had given her mother, and told the officer they were all Muslims who lived in Frankford and belonged to the Susquehanna Mosque. The officer wrote this information in abbreviated form on the napkin. After taking the victim to the hospital, the officer showed the names on the napkin to another policeman. Seeing appellant's name, the other officer said he knew where appellant lived. When the police went to the address supplied by the officer, they were given another address by appellant's parents. Arriving at that destination, they apprehended appellant as he ran to get into a car.

The victim's sister, Rose DeBose, testified at trial that earlier during the evening in question she answered the telephone at the home where she and her sister, the deceased, resided. The caller identified himself as "Louis" and asked for Linda DeBose, the victim. The witness further testified that she recognized the voice as that of Louis Riggins, whom she knew from having spoken to him before, both in person and by telephone. At the end of the telephone conversation, Linda DeBose, the victim, told Rose DeBose, "Louis will over later on." When the sister left the house at 9:30 p.m. she locked the door. The door had two locks and a peephole. She testified that they always kept the door locked and admitted no one unless identified. She returned to the house at 11:45 p.m., after the police had taken the victim to the hospital. There was no sign of forcible entry. Rose DeBose further testified that three nights before the stabbing she observed Linda in their home along with appellant and one of the other named assailants. The other individual and Linda were engaged in an angry argument.

*Commonwealth v. Riggins*, 478 Pa. 222, 225–226, 386 A.2d 520, 521–522 (1978).

In examining claims of ineffective assistance of counsel, "we must first determine if the underlying issue is

of arguable merit." *Commonwealth v. Thomas,* 363 Pa.Super. 348, 352, 526 A.2d 380, 381 (1987). Only when the issue is of arguable merit may we proceed to the next inquiry which is "whether the course of action chosen by counsel had some reasonable basis designed to effectuate the client's interest." *Id.,* 363 Pa.Superior Ct. at 352, 526 A.2d at 382. Finally, the appellant must also "establish that the ineffectiveness so prejudiced his case that he did not receive a fair trial." *Id.,* 363 Pa.Superior Ct. at 353, 526 A.2d at 382. See also: *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Cope,* 359 Pa.Super. 140, 518 A.2d 819 (1986).

■ Appellant's first allegation of ineffective assistance is based on the following remark made by the prosecuting attorney during his closing argument:

Also, the term presumption of innocence has been mentioned, and in connection with that term "presumption of innocence" has been used the word "cloak". The defendant like all defendants is cloaked with the presumption of innocence. Keep in mind that this is a cloak for the innocent, not a shield for the guilty to hide behind.

Appellant argues that this remark was both improper and prejudicial. We disagree. The remark by the prosecuting attorney, in our view, was neither improper nor prejudicial. "In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Williams,* 346 Pa.Super. 456, 459, 499 A.2d 1089, 1091 (1985). Moreover, " '[i]t is well settled that comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.' " *Commonwealth v. Chew,* 338 Pa.Super. 472, 484, 487 A.2d 1379, 1385 (1985), quoting *Commonwealth v. Tabron,* 502 Pa. 154, 160, 465 A.2d 637, 639–640 (1983). See also: *Commonwealth v. D'Amato,* 514

Pa. 471, 526 A.2d 300 (1987). In the instant case, the prosecuting attorney was merely responding to the same analogy which had been employed by defense counsel in his closing argument. Because the remark was not improper, neither appellant's trial counsel nor his appellate counsel was ineffective for failing to challenge the same. Counsel was not required to assert a meritless claim. See: *Commonwealth v. Albrecht*, 510 Pa. 603, 626, 511 A.2d 764, 776 (1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987); *Commonwealth v. Stoyko*, 504 Pa. 455, 472, 475 A.2d 714, 723 (1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984).

■ In a dying declaration, the victim identified appellant as one of her three assailants and stated that all three were Muslims. At trial, the Commonwealth elicited testimony concerning appellant's membership in the Black Muslim religion. Appellant contends that this testimony was irrelevant and that it improperly injected the element of racial prejudice into his trial. He contends further that both his trial and appellate counsel were ineffective for failing to raise the issue. We disagree. The P.C.H.A. court concluded, and we agree, that appellant's being a Muslim was a relevant fact in view of the circumstances of this case. It was relevant with respect to the identification of the killer in view of the victim's dying declaration. Cf. *Commonwealth v. Rainey*, 271 Pa.Super. 240, 245–246, 412 A.2d 1106, 1108–1109 (1979) (police officer's testimony concerning witness' reference to a Muslim meeting was proper since it concerned a legitimate response to a valid question asked by police during their investigation); *Commonwealth v. Griffin*, 271 Pa.Super. 228, 238, 412 A.2d 897, 902 (1979) (references to Muslim religion were properly admitted to demonstrate existence of strong common bond among appellant, his co-defendants, decedent and witnesses).

■ During the Commonwealth's cross-examination of defense witness, Thomas Ferguson, the witness volunteered via unresponsive answer that appellant had been released from jail during the year prior to the murder. The trial

court, in response to a motion for mistrial, found that the prosecuting attorney had neither solicited the response from the witness nor exploited it in any way. The court, thus, denied appellant's motion for a mistrial. Appellant argues on appeal that the Commonwealth improperly conveyed to the jury the fact that he had a prior criminal record and that his trial and appellate counsel were ineffective for failing to preserve this issue on direct appeal.[1] We find that the trial court's ruling was proper and that counsel were not ineffective.

The decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of that discretion. *Commonwealth v. Hamm*, 325 Pa.Super. 401, 412, 473 A.2d 128, 133 (1984); *Commonwealth v. Seigrist*, 253 Pa.Super. 411, 418, 385 A.2d 405, 408 (1978). It has long been held that "evidence of a distinct crime, except under special circumstances, is inadmissible against a defendant who is being tried for another crime, because the commission of one crime is not proof of the commission of another, and the effect of such evidence is to create prejudice against the defendant in the jury's mind." *Commonwealth v. Morris, supra*, 493 Pa. [164] at 174–175, 425 A.2d [715] at 720 [1981]. Thus, clear references to prior unrelated criminal activity warrant a mistrial. *Commonwealth v. Watson*, 355 Pa.Super. 160, 167, 512 A.2d 1261, 1265 (1986). Our Supreme Court made clear in *Commonwealth v. Nichols*, 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979), however, that "(not) all references which may indicate prior criminal activity warrant reversal." Mere "passing references" to prior criminal activity will not necessarily require reversal unless the record illustrates that prejudice resulted from the reference. *Id.*

. . . .

Additionally, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth

---

1. On direct appeal the Supreme Court found that this issue had been waived due to counsel's failure to make a timely objection. *Commonwealth v. Riggins*, 478 Pa. 222, 231, 386 A.2d 520, 524–525 (1978).

are considerations relevant to the determination of whether a mistrial is required. *Commonwealth v. Pursell,* 508 Pa. 212, 230, 495 A.2d 183, 192 (1985); *Commonwealth v. Williams,* 470 Pa. 172, 178, 368 A.2d 249, 252 (1977). *Commonwealth v. Thomas,* 361 Pa.Super. 1, 14–15, 521 A.2d 442, 449–450 (1987) (footnote omitted). See also: *Commonwealth v. Richardson,* 496 Pa. 521, 437 A.2d 1162 (1981); *Commonwealth v. Maute,* 336 Pa.Super. 394, 485 A.2d 1138 (1984). Our review of the record confirms the trial court's determination that the witness' remark concerning appellant's having been released from jail was neither solicited by the prosecution nor taken advantage of in any way. We find nothing in this isolated remark which was so prejudicial as to require that appellant be awarded a new trial. His trial counsel had moved for a mistrial, and the motion had been denied. Neither trial counsel nor appellate counsel was ineffective for failing to preserve the issue thereafter.

■ Appellant next argues that his trial counsel was ineffective for failing to object to the admission into evidence of the napkin on which a police officer had recorded the victim's dying declaration.[2] He further contends that his appellate counsel was ineffective for failing to raise this issue on appeal. While appellant argues that the napkin should not have been admitted into evidence, he suggests no basis upon which it could properly have been excluded at trial. Absent some showing by appellant that an adequate basis existed to exclude the evidence, we will not find counsel ineffective. See: *Commonwealth v. Ehrsam,* 355 Pa.Super. 40, 56, 512 A.2d 1199, 1207 (1986); *Commonwealth v. Scott,* 345 Pa.Super. 86, 91, 497 A.2d 656, 659 (1985); *Commonwealth v. Durah–El,* 344 Pa.Super. 511, 516, 496 A.2d 1222, 1225 (1985). Moreover, the police

2. Appellant also takes issue with the trial court's decision to allow this napkin to go out with the jury during its deliberations. This issue was finally litigated before the Supreme Court in appellant's direct appeal, *Commonwealth v. Riggins, supra,* 478 Pa. at 231–233, 386 A.2d at 525–526, and we will not review this claim further in the context of a P.C.H.A. proceeding. See: 42 Pa.C.S. § 9544(a)(3).

officer was present and testified before the jury. The receipt of his recorded version of the dying declaration was not prejudicial.

■ As a part of its charge to the jury the trial court said, "there is evidence that would tend to establish, if believed by you, that the defendant solicited and agreed with others, as well as participated in and performed acts which caused the death of Linda DeBose." Appellant complains that this portion of the charge created for the jury the impression that they could find him guilty as an accomplice even though not convinced beyond a reasonable doubt. In that trial counsel did not object to this portion of the jury charge, appellant alleges that he was ineffective; and because appellate counsel did not question trial counsel's effectiveness, appellant argues that he too was ineffective. This argument is wholly without merit.

> In evaluating a trial court's instructions, we review the charge as a whole. *Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61 (1983); *Commonwealth v. Sparks,* 351 Pa. Super. 320, 505 A.2d 1002 (1986). We may not predicate a finding of error upon isolated excerpts of the charge as it is the general effect of the charge that controls. *Commonwealth v. Smith,* 343 Pa.Super. 435, 495 A.2d 543 (1985). Even if the court erred when it instructed the jury, we will reverse only if the error prejudiced the appellant. *Levy and Surrick v. Surrick,* 362 Pa.Super. 510, 524 A.2d 993 (1987). *See Commonwealth v. Ohle, supra.*

*Commonwealth v. Klinger,* 369 Pa.Super. 526, 538, 535 A.2d 1060, 1066 (1987). In the instant case, not only did the trial court fully explain to the jury the burden of finding guilt beyond a reasonable doubt, but, immediately prior to the complained of portion of the charge, the court had stated:

> You may find the defendant guilty of murder in this case on the ground that he was an accomplice in that murder or a co-conspirator in that murder, as long as you are satisfied beyond a reasonable doubt that the crime was

committed, first, and second, that the defendant was the person that committed it or was an accomplice of the person or persons who committed it.

Thus, appellant's claim that the jury was not properly instructed on the burden of finding him guilty beyond a reasonable doubt is totally unwarranted. Trial and appellate counsel were not ineffective for failing to pursue this completely meritless issue.

■ Finally appellant, in a pro se supplemental brief, challenges the effectiveness of his court appointed P.C.H.A. counsel. Appellant argues that his P.C.H.A. counsel was ineffective for abandoning the claim that a portion of the jury charge was in violation of constitutional due process as determined by the United States Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). This claim had been included in appellant's initial pro se P.C.H.A. petition, but it was not included in the amended petition filed by counsel. In *Sandstrom*, the Supreme Court determined that a jury charge which, in part, had stated that "the law presumes that a person intends the ordinary consequences of his voluntary acts" was in violation of the Due Process Clause of the Fourteenth Amendment. Specifically, the Court held that such an instruction, without telling the jury that it was only an inference which the jury could ignore, allowed the state to prove the intentional, knowing aspect of a homicide by proof that was not beyond a reasonable doubt. In the instant case, a portion of the charge to the jury was similar to that which was found to be unconstitutional in *Sandstrom*.[3] Appellant argues that he should be granted a new

3. That portion of the jury charge which appellant claims is at odds with the holding in *Sandstrom* was as follows:

One is presumed to know and must intend the natural and probable consequences of his act, so that if one uses a deadly weapon, such as a knife, upon the body of another at some vital spot such as the neck or the chest—the thorax area—in the absence of qualifying circumstances he is presumed to intend the natural and probable consequences of his act, which is death, and if from the evidence you find that the defendant did inflict wounds as

trial due to P.C.H.A. counsel's failure to assert this issue. We disagree. Even if the instruction were arguably erroneous, counsel cannot be deemed ineffective for failing to object.

■ Appellant was convicted of first degree murder in 1974. His conviction became final when it was affirmed on direct appeal by the Pennsylvania Supreme Court in 1978. The decision of the United States Supreme Court in *Sandstrom* was not handed down until 1979, after appellant's conviction had become final. Appellant argues, however, that *Sandstrom* should be applied retroactively to cases now pending on collateral review.[4] Our review of the relevant case law leads us to a different conclusion. In *Commonwealth v. Gillespie*, 512 Pa. 349, 516 A.2d 1180 (1986), our Supreme Court held that "a new rule of law to which we give full retroactive effect, will not be applied to any case on collateral review unless that decision was handed down during the pendency of an appellant's direct appeal and the issue was properly preserved there, or ... is non-waivable." *Id.*, 512 Pa. at 355, 516 A.2d at 1183 (adopting the reasoning of the United States Supreme Court in *Shea v. Louisiana*, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985)). See also: *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (held that *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) does not apply retroactively to cases on collateral review); *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28

described by our doctor in the case you may infer both malice and the intention to cause Linda DeBose's death.

4. Appellant asserts that the Supreme Court's holding in *Yates v. Aiken*, 484 U.S. ——, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988), requires that *Sandstrom* be applied retroactively to cases on collateral review. Appellant, however, misinterprets *Yates*. The petitioner in *Yates* had been convicted after *Sandstrom* had been decided. In *Yates* the Supreme Court rejected an argument by the State of South Carolina that *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) not be applied retroactively on collateral review. The Court determined that the *Francis* case did not announce a new rule of law but, rather, was merely an application of the principle established in *Sandstrom*. The Court in *Yates* did not hold that *Sandstrom* should be applied retroactively to cases on collateral review.

L.Ed.2d 404 (1971) (Harlan, J., concurring) (cases on collateral review ordinarily should be considered in light of the law as it stood when conviction became final); *Commonwealth v. Harper*, 512 Pa. 155, 516 A.2d 319 (1986); *Commonwealth v. Carr*, 370 Pa.Super. 1, 535 A.2d 1120 (1987); *Commonwealth v. Ahearn*, 357 Pa.Super. 404, 516 A.2d 45 (1986). Our reading of *Commonwealth v. Gillespie, supra*, convinces us that appellant is not entitled to retroactive application of the *Sandstrom* case in the context of a P.C.H.A. proceeding. His P.C.H.A. counsel was not ineffective for failing to pursue this issue.

The order of the P.C.H.A. court is affirmed.