571 A.2d 1079

COMMONWEALTH of Pennsylvania

v.

Anthony James BONACE, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 11, 1989.

Filed March 6, 1990.

Wayne H. Hundertmark, Cranberry, for appellant.

William G. Martin, Jr., Dist. Atty., Franklin, for Com., appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

WIEAND, Judge:

Anthony James Bonace was tried by jury and was found guilty of two counts of burglary, two counts of theft by unlawful taking, and one count of criminal conspiracy. Post-trial motions were denied, and Bonace was sentenced to pay fines totalling three thousand ($3,000) dollars, to make restitution, and undergo imprisonment for a total of not less than twenty-five (25) months nor more than seventy-two (72) months. On direct appeal from the judgment of sentence, Bonace asserts that the trial court erred when it refused to hold, as a matter of law, that the police conduct in this case had been so outrageous as to prevent conviction on due process grounds. He contends also that the trial court erred when it denied defense motions for mistrial after the Commonwealth, on four separate occasions during trial, had elicited evidence of prior criminal activity. These issues are lacking in merit; and, therefore, we affirm the judgment of sentence.

The evidence introduced by the Commonwealth at trial disclosed that on or about April 10, 1987, James Wheatcroft went to appellant's home in Youngstown, Ohio, where he was asked to participate with appellant in the commission of several burglaries. Wheatcroft purported to agree, but thereafter he contacted Joseph Ennett, of the Bureau of Alcohol, Tobacco and Firearms, and Detective Michael Hoza, of the Poland Township Police Department, and told them of appellant's plans. He said that appellant had referred specifically to the entry of a garden or tractor shop in Greenville, Mercer County, Pennsylvania. Wheatcroft

agreed to inform Ennett and Hoza when a date was set for the burglaries and to wear a body wire on that date. Wheatcroft learned on the morning of April 15, 1987, that the burglaries were to be committed that night. Participating in the preliminary discussion, in addition to Wheatcroft and appellant, were James Miller and Jenny Keller. After this discussion, Wheatcroft contacted Ennett and Hoza and told them of the plans which had been made and that his pickup truck was to be used for the trip to Pennsylvania. He also told them that Miller would be armed. Ennett thereafter arranged for surveillance, which included participation by the Bureau of Alcohol, Tobacco and Firearms, the Department of the Treasury, the Poland Township and City of Youngstown Police Departments, and the Pennsylvania State Police. Later in the day, Wheatcroft was fitted with a body wire, and an electronic tracking device was placed in the taillight of his truck.

When the would-be burglars left Ohio, they were followed by law enforcement personnel in unmarked cars. They entered Pennsylvania on Interstate Route 80 and proceeded to Route 8, in Berkeyville, Venango County, where they exited the interstate highway. They then drove north, passed through the City of Franklin, and turned into Pone Lane in Sandycreek Township. After they had circled the area several times, Wheatcroft and Miller left the vehicle and broke into a home owned by Paul Lehman. While Miller and Wheatcroft were inside the home, appellant and Keller drove around the block. All the burglars remained in radio contact with each other, however, and actually discussed the items which were to be taken. When Miller and Wheatcroft left the Lehman home, they were directed by appellant to a second home located a distance of one hundred yards away. This home, which was owned by John Hricsina, was also entered, and various items of personal property were taken. The burglars were later apprehended in Franklin, with the help of local police.

At trial, appellant demurred to the Commonwealth's evidence; and when his demurrer was denied, he rested with-

out offering evidence. The jury, although fully instructed on entrapment, rejected this defense and found appellant guilty of all charges. On appeal, appellant argues that police conduct was "outrageous" because they allowed the burglaries to occur despite prior knowledge that the crimes were to be committed. Inasmuch as the police knew of the intended burglaries, he argues, they must be deemed accomplices and guilty of an "outrageous" entrapment.

The evidence at trial was that the police had not intended to allow burglaries to occur but had contemplated an arrest as soon as their electronic surveillance produced evidence of a criminal conspiracy. Faulty equipment and hilly terrain, however, permitted the receipt of only an intermittent signal from Wheatcroft's truck and the wire which he was wearing. In addition, because of unfamiliarity with Venango County, the police lost the pickup truck which they were following. As a result, police did not become aware of the location of the first burglary until after Miller and Wheatcroft had already entered the Lehman home. They then decided not to interrupt the burglary in progress, because they had been told that Miller was armed and suspected that residents might be present in the home. The police also did not know that a second burglary was to be committed and became aware of it only after Miller and Wheatcroft had commenced their entry of the home. Again, an attempt to make an arrest was delayed.

■ The trial court evaluated appellant's contention that the police had violated his due process rights in the following manner:

> Although the officers' conduct, by their own candid admission, fell short of the level of professionalism in communication and coordinating skills that one would expect from the various law enforcement agencies involved (Department of Treasury, Youngstown City Police, Pennsylvania State Police, inter alia), we do not find their conduct "outrageous". Before finding conduct "outrageous" we would be required to find extensive and nefarious police involvement in, and encouragement of,

criminal activities. *Com. v. Delligatti,* [371 Pa.Super. 315], 538 A.2d 34 (Pa.Superior Ct.1988); *Com. v. Mathews,* 347 Pa.Superior Ct. 320, 500 A.2d 853 (1985); *U.S. v. Twigg,* 588 F.2d 373 (3d Cir.1978); *U.S. v. West,* 511 F.2d 1083 (3d Cir.1975); *Hampton v. U.S.,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (plurality opinion); *U.S. v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). No such evidence exists. On the contrary, the evidence supports the finding that Defendant was predisposed to committing these burglaries. He implemented the plans to do so. He was completely in charge of the operation. The fact that the police officers were unaware of the next move that the Defendant intended to make—actually enter a particular house—and [failed to] prevent that entry is not evidence of "outrageous" conduct on their part, but, rather, demonstrates the police role as an eavesdropper without control over the developments and undermines Defendant's entrapment defense.

This rationale, which we adopt, is dispositive of appellant's due process argument. Cf. *Commonwealth v. Lee,* 262 Pa.Super. 218, 221, 396 A.2d 724, 725 (1978) (merely affording opportunities or facilities for the commission of crime by one who already has the necessary criminal intent does not defeat the prosecution).

Appellant's reliance upon *Commonwealth v. Mathews,* 347 Pa.Super. 320, 500 A.2d 853 (1985), is misplaced. In that case, the Superior Court held that "[e]ven where entrapment is not proved, police involvement in criminal activity may be so outrageous that a prosecution will be barred on due process grounds." *Id.* at 321, 500 A.2d at 854. See also: *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978); *Commonwealth v. Delligatti,* 371 Pa.Super. 315, 538 A.2d 34 (1988). In *Mathews,* where the defendants were convicted of attempting to manufacture methamphetamine, a controlled substance, the police had provided the defendants with

money for the purchase of necessary chemicals to manufacture the substance and also for the rental of a residence where the methamphetamine could be manufactured. Police also had helped move necessary equipment into the home and instructed the defendants step-by-step in the manufacturing process. A majority of the Superior Court concluded that such "extensive police involvement in, and encouragement of" illegal activity was so outrageous as to violate due process. *Id.* at 327–328, 500 A.2d at 857. Police conduct had been comparable " 'to a burglar being instructed on a step-by-step turn of a vault dial by the police so he [might] consummate the act.' " *Id.* at 328, 500 A.2d at 857, quoting the trial court's opinion. These facts are not at all similar to the facts of the instant case. Here, the impetus for the several burglaries, as well as the planning thereof and the means for carrying out the same, came from the evil minds of the burglars themselves. The police did nothing more than allow them to commit their criminal acts before they were arrested. The poor quality of the police surveillance while the burglaries were being committed did not excuse appellant's criminal acts or constitute a bar to prosecution therefor.

Whether to declare a mistrial is a decision which rests within the sound discretion of the trial court, whose exercise thereof will not be reversed absent an abuse of such discretion. *Commonwealth v. Hamm*, 325 Pa.Super. 401, 412, 473 A.2d 128, 133 (1984). Clear references to prior unrelated criminal conduct by a defendant generally warrant the granting of a defense motion for mistrial, because the commission of one crime is not proof of the commission of another and because the effect of such evidence is to create unfair prejudice against the defendant. *Commonwealth v. Morris*, 493 Pa. 164, 175, 425 A.2d 715, 720 (1981); *Commonwealth v. Riggins*, 374 Pa.Super. 243, 251, 542 A.2d 1004, 1008 (1988); *Commonwealth v. Thomas*, 361 Pa.Super. 1, 14–15, 521 A.2d 442, 449–450 (1987). However, not all references which may indicate prior criminal activity warrant reversal. Mere "passing references" to prior crim-

inal activity will not necessarily require reversal unless the record illustrates definitively that prejudice resulted from the reference. *Commonwealth v. Nichols,* 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979); *Commonwealth v. Riggins, supra.* The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are additional factors to be considered in determining whether a mistrial is necessary. *Commonwealth v. Pursell,* 508 Pa. 212, 230, 495 A.2d 183, 192 (1985); *Commonwealth v. Williams,* 470 Pa. 172, 178, 368 A.2d 249, 252 (1977). See also: *Commonwealth v. Richardson,* 496 Pa. 521, 437 A.2d 1162 (1981); *Commonwealth v. McEachin,* 371 Pa.Super. 188, 537 A.2d 883 (1988); *Commonwealth v. Maute,* 336 Pa.Super. 394, 485 A.2d 1138 (1984). Moreover, "[a]n immediate curative instruction to the jury may alleviate [the] harm [which would otherwise result] from reference to prior criminal conduct." *Commonwealth v. Morris,* 513 Pa. 169, 176, 519 A.2d 374, 377 (1986). See also: *Commonwealth v. Lawson,* 519 Pa. 175, 546 A.2d 589 (1988); *Commonwealth v. Fahy,* 512 Pa. 298, 516 A.2d 689 (1986); *Commonwealth v. Kubiac,* 379 Pa.Super. 402, 550 A.2d 219 (1988).

■ The first remark complained of by appellant in this case occurred during the prosecuting attorney's opening statement to the jury. While highlighting the evidence to be introduced on behalf of the Commonwealth, the prosecutor said:

> There had been some talk on the way over—you're going to hear that Agent Ennett recalls a conversation about talking about going over to Greenville or Greensburg, I guess was maybe the word used, to burglarize a lawn and garden shop.

Contrary to appellant's assertion, this comment did not relate to prior criminal conduct by appellant. It pertained, rather, to statements which appellant had made to Wheatcroft in furtherance of his plan to enter Pennsylvania for the purpose of committing a burglary. This conversation was not rendered irrelevant or immaterial merely because

the conspirators subsequently decided to alter the goal of their nefarious activities in Pennsylvania.

During examination of the informant, Wheatcroft, the prosecutor asked the witness to relate conversations which had occurred during the trip from Ohio to Pennsylvania on the night of April 15, 1987 and which pertained to the plans for that evening. Wheatcroft responded: "We talked about breaking in as many houses as we could, making a big haul, past experiences, et cetera, et cetera." Appellant contends that Wheatcroft's reference to "past experiences" could have been understood by the jury to refer to prior burglaries. We find therein no basis for relief. The witness's answer was nothing more than a passing reference to a prior association and did not specify either criminal or unseemly conduct. The remark, moreover, was made in response to a proper question and was not elicited for the purpose of prejudicing appellant unfairly. After appellant had objected, the trial court offered to provide a cautionary instruction, but its offer was declined by defense counsel. Under these circumstances, the trial court did not abuse its discretion by denying appellant's motion for mistrial.

During the cross-examination of Pennsylvania State Trooper Lucian Paglia, defense counsel inquired why the police had allowed two burglaries to occur without taking action, and the witness responded:

Because our intent [ ] with the wire was to wait and see until we got enough, and we would assume from what we were told from Wheatcroft, the way [appellant] always operated, that he would say this is what we were going to do, and once that was heard that is when we would effect an arrest.

The trial court denied a motion for mistrial based upon this answer, but offered to give a cautionary instruction. This was declined by the defense. We find no abuse of discretion in the trial court's denial of the defense motion for mistrial. The trooper's remark was elicited by defense counsel and was a fair response to the question asked.

█ Finally, appellant argues that a mistrial should have been granted when Agent Ennett, asked by the prosecutor about information which had been supplied by Wheatcroft, testified that "[h]e had information on an interstate burglary ring." Appellant objected to this answer. In response, the trial court gave an extensive curative instruction as follows:

This witness has said something about the fact of investigating an interstate burglary ring. That may or may not be the case. In any event, it's not for your consideration. You should disregard that statement as though it has never been stated. That means in the course of your deliberations, you won't talk about it, you won't think about it. It's not a factor in this case.... It is not for you to pass upon whether or not the defendant in this case Mr. Bonace is a good person. Whether he's a good person or not is not for you to consider. The only thing you are to consider here today is whether or not Mr. Bonace was involved in the burglary of the two residences.... Whether or not he's a good person and whether or not he ever committed a crime before or not, whether or not he goes to church every Sunday, that is of no concern of yours. Therefore, the reference by the officer to there being an interstate burglary ring is immaterial, it's not relevant and put it aside and strike it from your memory. I'm asking you to do that and the law requires you to do it. The reason for it is because all we are concerned [ ] about is what occurred on the 15th of April. Okay.

. . . .

To be absolutely [sure] that you understand, whether or not there was an interstate burglary ring has nothing to do with why we are here today, and you are totally to disregard that comment in your further deliberations in the case. It has absolutely nothing to do with this case.

Whether the jury's exposure to an improper reference to prior criminal conduct can be cured by a prompt, cautionary instruction depends upon a consideration of all the attend-

ing circumstances. *Commonwealth v. Morris, supra* 513 Pa. at 177, 519 A.2d at 377; *Commonwealth v. Richardson, supra* at 526, 437 A.2d at 1165. In reviewing the decision of the trial court to give a cautionary instruction instead of aborting an otherwise error-free trial, we must determine whether the court abused its discretion or committed an error of law. *Commonwealth v. Shawley,* 522 Pa. 475, 481, 563 A.2d 1175, 1177–1178 (1989) (plurality opinion). See also: *Commonwealth v. Morris, supra* 513 Pa. at 175, 519 A.2d at 376; *Commonwealth v. Heaton,* 504 Pa. 297, 302, 472 A.2d 1068, 1071 (1984). Instantly, the record discloses that the witness's reference to an interstate burglary ring was not intentionally elicited by the prosecutor. The prosecutor also did not attempt to take advantage of the witness's reference. The trial court sustained a defense objection and gave an immediate and careful cautionary instruction. The court's forceful instruction to disregard the witness's improper remark, we conclude, was sufficient to cure the prejudice, if any, which may otherwise have been caused. See, e.g.: *Commonwealth v. Richardson, supra* (mistrial was unnecessary where jury was instructed to disregard witness's testimony concerning a prior burglary of the same residence for which defendant was then on trial); *Commonwealth v. Povish,* 479 Pa. 179, 387 A.2d 1282 (1978) (mistrial not necessary where jury was instructed to disregard testimony about a robbery for which defendant had been charged but was not then being tried); *Commonwealth v. Whitfield,* 474 Pa. 27, 376 A.2d 617 (1977) (mistrial was unnecessary where jury was instructed to disregard remark that witness had previously seen defendant "work people over"). The trial court's denial of appellant's motion for a mistrial was not an abuse of discretion.

The evidence of appellant's guilt in this case was overwhelming. Because of the nature of the crimes committed and the manner in which they were uncovered by the police and committed by the appellant and his accomplices, a jury could not have failed to realize that the burglars were not naive schoolboys. The jurors were nevertheless instructed

 

that it was their duty to determine solely whether appellant had committed the crimes with which he had been charged. The trial court carefully navigated the proceedings through the shoals of unfair prejudice; and the jury returned a verdict consistent with the compelling evidence which had been produced by the Commonwealth. Appellant is not entitled to an arrest of judgment or a new trial.

The judgment of sentence is affirmed.