**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EVELYN HENDERSON | : | |
| | : | |
| Appellant | : | No. 819 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 14, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003070-2022

BEFORE: NICHOLS, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: MAY 22, 2025**

Appellant Evelyn Henderson[1] appeals from the judgment of sentence imposed after a jury convicted her of one count each of second-degree murder, aggravated arson, and arson.[2] On appeal, Appellant argues that her waiver of the right to counsel was invalid and that her statement to police should have been suppressed. We affirm.

The trial court summarized the relevant facts of this case as follows:

The instant matter arises out of the death of Appellant's husband, Carmen Henderson (hereinafter "Victim"). Shortly after 5:30 a.m. on June 16, 2022, Susquehanna Township police officers responded to a residence at 306 Stuart Place in response to a 911 call made by Appellant. Upon arrival to the residence, officers

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant also identified herself as Evelyn Zigerelli and Evelyn Zigerelli Henderson. *See* Pretrial Hr'g, 2/21/24, at 10; Appellant's Brief at 9.

[2] 18 Pa.C.S. §§ 2502(b), 3301(a.1)(1)(i), and 3301(a)(1)(i), respectively.

found the deceased victim naked in a fetal position on the back porch of the residence. It was apparent that Victim had been deceased for a while, and it was apparent that Victim's entire body had been burned severely. Investigators also observed fire debris surrounding a table on the patio.

When officers and other individuals attempted to ask questions to Appellant at the scene, she appeared aloof, distracted, and emotionless, and she provided very short responses to the officers' inquiries. She was particularly hesitant and evasive when an officer asked her whether she and Victim had been on good terms. Moreover, when one of the officers arrived on the scene, Appellant was pacing back and forth, and she stated to the officer, "I'm in trouble. I know that." In recounting when she had last seen . . . Victim, Appellant provided several contradictory statements. Specifically, she told the coroner that she had last seen Victim at 7:00 p.m. or 8:00 p.m. when he went out to smoke a cigar, but she told a police officer that she had last seen Victim at 11:00 p.m. in the living room when they were having an argument.

Later that morning, Appellant was taken to the police station for questioning. When asked about the events that had transpired prior to Victim's death, Appellant again provided various contradictory statements regarding the timeline of events. For example, when she had called 911 shortly after 5:00 a.m., she told dispatchers that she heard Victim scream at about 1:00 a.m., noticed he had burned and injured himself. However, in the interview at the station, Appellant indicated that the incident involving Victim had happened at 4:30 p.m. the previous afternoon and that they had been arguing about money prior to the incident. An officer who testified at trial recalled that Appellant altered the purported timeline of events no fewer than four or five times throughout the course of her interview. As was the case at the scene, Appellant did not show much emotion at the police station, she frequently stalled before answering questions, and officers observed that she appeared unusually laid back considering the circumstances.

Fire investigators conducted a thorough investigation and ultimately determined that the origin of the fire was the back strapping of the folding chair that Victim was sitting in at the time of his death, and the cause of the fire was an open flame to that back strapping of the chair. Investigators also determined that the fire was incendiary, meaning that it was set intentionally. The

medical examiner conducted an autopsy and determined that Victim's cause of death was thermal burns, and the manner of death was homicide.

On June 21, 202[2], shortly following Victim's autopsy, Appellant was interviewed by police again, this time at Dauphin County Prison. When confronted with the evidence of the autopsy, Appellant initially insisted that she did not set Victim on fire. However, after being left in silence for a few minutes, Appellant looked up and told the officers, "I can't have a jury trial." Corporal Richard Wilson then told Appellant that the only way the District Attorney might offer her a plea deal of any sort would be if she was forthcoming and truthful about what happened. Appellant then sat quiet for a few minutes before confessing and proclaiming that she set Victim on fire.

In connection with the aforementioned events, Appellant was charged with one count of criminal homicide and two counts of arson. Following a trial held from March 12-14, 2024, a jury found Appellant guilty at count 1— second[-]degree murder; count 2 — aggravated arson — bodily injury; and count 3 — arson — danger of death or bodily injury.[3] On May 14, 2024, this [c]ourt sentenced Appellant to life in prison without the possibility of parole at Count 1, and no penalty was imposed at counts 2 and 3, as they merged with count 1 for sentencing purposes.[4]

Trial Ct. Op., 8/21/24, at 1-3 (some formatting altered).

Appellant filed a timely notice of appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issue:

Whether the trial court erred in holding that [Appellant] knowingly waived her right to an attorney when she had previously invoked that right, asking for a public defender, and the Commonwealth

---

[3] *See* N.T., Trial, 3/12-14/24, at 534.

[4] *See* N.T., Sentencing 5/14/24, at 6; *see also* Sentencing Order, 5/14/24.

knew [Appellant] had made that request and chose to interview her prior to any cooling off period?

Appellant's Brief at 4 (some formatting altered).[5]

_____

[5] We note that in her Rule 1925(b) statement, Appellant also presented an issue stating: "The [c]ourt imposed an illegal sentence of no further penalty at counts 2 and 3, (the arson counts) when the counts should have merged with count 1, second degree murder." Rule 1925(b) Statement, 7/11/24, at 1-2. However, Appellant also added a footnote to that assertion stating:

There is an ambiguity, as the [c]ourt during sentencing remarked that counts 2 and 3 should merge but stated no 'additional sentences imposed with regard to that.' The sentencing order reflects that 'no additional sentences shall be imposed.' **If the [c]ourt meant that the offenses merge, then there would be no error**.

*Id.* at 2 (emphasis added).

The trial court addressed this issue in its Rule 1925(a) opinion and concluded it was meritless because the record reflected that the trial court acknowledged that the arson counts **merged** with second-degree murder for sentencing purposes. *See* Trial Ct. Op., 8/21/24, at 3, 7. Although Appellant did not raise this merger issue in her appellate brief, we note that merger implicates the legality of the sentence, and the legality of a sentence is an issue this Court can raise *sua sponte*. *See Commonwealth v. Watson*, 228 A.3d 928, 941 (Pa. Super. 2020). Upon review, the record reflects that the trial court explained that there would not be an additional penalty on the two arson convictions, and it specifically stated that the arson convictions **merged** with second-degree murder for sentencing purposes. *See* N.T., Sentencing 5/14/24, at 6 (stating "[w]ith regard to the offense of murder in the second degree, I sentence you to life imprisonment without parole. The two remaining findings of the jury of guilt on Count 2 and 3, aggravated arson and arson, **I agree they will merge for purposes of sentencing**, so there won't be any additional sentences imposed with regard to that.") (emphasis added); Sentencing Order, 5/14/24 (stating that Appellant "is sentenced to life imprisonment without the possibility of parole and ordered to pay the costs of these proceedings. **Counts 2 and 3 shall merge for purposes of sentencing**, so no additional sentences shall be imposed.") (emphasis added); *see also* Trial Ct. Op., 8/21/24, at 3, 7 (stating that "no penalty was

*(Footnote Continued Next Page)*

- 4 -

Appellant argues that her waiver of counsel was invalid under Article 1, Section 9 of the Pennsylvania Constitution (Art. 1, Section 9) and the Sixth Amendment to the United States Constitution (Sixth Amendment). Appellant's Brief at 16-18. Appellant contends that she expressly requested an attorney, but the Commonwealth continued to question her. *See id.* Appellant contends that because her waiver of counsel was invalid, the trial court should have suppressed her statements to police. *See id.* at 21-35.

The Commonwealth argues that Appellant failed to unequivocally invoke her right to counsel and that the trial court properly concluded that Appellant knowingly, voluntarily, and intelligently waived her right to counsel. Commonwealth's Brief at 7. The Commonwealth contends that although Appellant asked Corporal Wilson "[d]o I still get a [p]ublic [d]efender[,]" this question was not an unequivocal invocation of her right to counsel. *Id.* at 8. Moreover, Corporal Wilson told Appellant that she would have to apply for a public defender. *See id.*

---

imposed at counts 2 and 3, **as they merged with count 1 for sentencing purposes**[,]" and concluding that Appellant's merger claim is meritless because the trial court specifically acknowledged that the arson counts merged with second-degree murder for purposes of sentencing) (emphasis added). Accordingly, because the trial court specifically stated that the arson convictions merged with second-degree murder, we discern no error with respect to the legality of Appellant's sentence. *See Commonwealth v. Adams*, 39 A.3d 310, 325 (Pa. Super. 2012) (explaining that the underlying or predicate felony merges with second-degree murder for purposes of sentencing) (citing *Commonwealth v. Harper*, 516 A.2d 319, 321 (Pa. 1986)).

- 5 -

Our review of a challenge to the denial of motion to suppress is limited to determining whether the suppression court's factual findings are supported by the record and whether the suppression court's legal conclusions drawn from those facts are correct. *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). We may only review "the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted). Further, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted). This Court is bound by the suppression court's factual findings that are supported by the record, but we are not bound by its legal conclusions, which we review *de novo*. *Commonwealth v. Briggs*, 12 A.3d 291, 320-21 (Pa. 2011).

However, before we may reach Appellant's claim concerning suppression of her statements, we must first address whether Appellant waived her right to counsel. *See Commonwealth v. Johnson*, 158 A.3d 117, 121 (Pa. Super. 2017) (stating that this Court must review whether the appellant properly waived the right to counsel prior to reviewing suppression claim). This Court has previously explained:

> In *Miranda* [*v. Arizona*, 384 U.S. 436, 474 (1966)], the United States Supreme Court established that an accused has the right to have counsel present during custodial interrogations under the

- 6 -

Fifth and Fourteenth Amendments to the United States Constitution. This right to counsel is part of "a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination." *J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011).

In *Edwards v. Arizona*, [451 U.S. 477, 484–85 (1981)], the Supreme Court addressed the consequences of a suspect's invocation of the right to counsel. The *Edwards* court held that "when an accused has invoked his right to have counsel present during custodial interrogation," police may not conduct further interrogations "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." If police conduct further interrogations outside the presence of counsel, "the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).

To trigger these protections, a defendant's request for counsel must be sufficiently clear "that a reasonable police officer would understand the statement to be a request for an attorney." *Davis*[ *v. United States*, 512 U.S. 452, 454 (1994)]. In *Davis*, police officers were investigating a murder that occurred after the victim lost a pool-game bet and refused to pay. *Id.* at 454. Naval criminal investigators focused on Davis when they discovered that he had been at the bar on the evening in question and owned a pool cue that was stained with blood. *Id.* Davis was brought in for questioning, provided his rights,[FN8] and waived his rights to remain silent and to counsel. *Id.* at 454–55. During the interview, Davis said, "Maybe I should talk to a lawyer." *Id.* at 455. In response, the criminal investigator reminded him of his right to counsel and asked Davis to clarify whether he wanted a lawyer. *Id.* Davis responded that he was not asking for a lawyer and did not want one. *Id.* However, one hour later, Davis said, "I think I want a lawyer before I say anything else," at which point investigators ended the interrogation. *Id.*

[FN8] Because Davis was an active military service member and the killing took place on a naval base, Davis was given his rights under Article 31 of the Uniform Code of Military Justice. *See* 10 U.S.C. § 831.

The **Davis** Court declined to disturb the conclusion of the lower courts that Davis's "maybe" statement was insufficiently clear to invoke his right to counsel. **Id.** at 462. The Court rejected the argument that an equivocal or ambiguous reference to counsel requires the police to stop questioning a suspect:

> We decline petitioner's invitation to extend **Edwards** and require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney. The rationale underlying **Edwards** is that the police must respect a suspect's wishes regarding his right to have an attorney present during custodial interrogation. But when the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of questioning "would transform the **Miranda** safeguards into wholly irrational obstacles to legitimate police investigative activity," **Michigan v. Mosley**, 423 U.S. 96, 102 (1975), because it would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present. Nothing in **Edwards** requires the provision of counsel to a suspect who consents to answer questions without the assistance of a lawyer.

**Id.** at 459–60 (some internal citations omitted). The Court went on to conclude that while "it will often be good police practice for the interviewing officers to clarify whether or not [a suspect] actually wants an attorney," the officers need not do so; instead, they "may continue questioning until and unless the suspect clearly requests an attorney." **Id.** at 461.

The inquiry into whether or not a suspect has invoked the right to counsel is an objective one. **Id.** at 459. The **Davis** Court explained that a suspect "must articulate his desire to have counsel present **sufficiently clearly that a reasonable police officer in the circumstances would understand the statement be a request for an attorney**." **Id.** (emphasis added). However, if the statement is "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect **might** be invoking the right to counsel," police are not required to cease questioning. **Id.** (emphasis in original).

*Commonwealth v. Champney*, 161 A.3d 265, 272–73 (Pa. Super. 2017) (some formatting altered).

Moreover, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defen[s]e."  U.S. Const. Amend. VI.  "The Sixth Amendment right is intended to protect the unaided layman at critical confrontations with the government after the initiation of the adversary process with respect to a particular crime[.]"  *McNeil*, 501 U.S. at 171 (quoting *United States v. Gouveia*, 467 U.S. 180, 189 (1984)).  The Sixth Amendment right to counsel "attaches only at or after the initiation of adversary judicial proceedings against the defendant."  *Gouveia*, 467 U.S. at 187.  More specifically, "[t]he Sixth Amendment right to the assistance of counsel attaches at the initiation of formal judicial proceedings against an individual by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *Commonwealth v. Hannibal*, 156 A.3d 197, 212 (Pa. 2016) (citation omitted).

"Any statement made by the individual thereafter which is 'deliberately elicited' by police, without the individual making a valid waiver of the right to counsel, is deemed a contravention of this right."  *Id.* (citation omitted).  Further, the Supreme Court of Pennsylvania has held that the right to counsel under Art. I, § 9 of the Pennsylvania Constitution "is coterminous with the Sixth Amendment right to counsel for purposes of determining when the right

- 9 -

attaches." ***Commonwealth v. Keaton***, 45 A.3d 1050, 1065 (Pa. 2012) (citing ***Commonwealth v. Arroyo***, 723 A.2d 162, 170 (Pa. 1999)).

Regarding the waiver of the right to counsel under the Sixth Amendment, our Supreme Court has stated: "[s]o long as the accused is made aware of the dangers and disadvantages of self-representation during post[-]indictment questioning . . . by use of the ***Miranda*** warnings, [her] waiver of [her] Sixth Amendment right to counsel at such questioning is knowing and intelligent." ***Commonwealth v. Rawls***, 256 A.3d 1226, 1234 (Pa. 2021) (quoting ***Patterson v. Illinois***, 487 U.S. 285, 300 (1988)); ***see also Commonwealth v. Garcia***, 877 EDA 2023, 2024 WL 4624682, at *7 (Pa. Super. Oct. 30, 2024) (unpublished mem.) (stating that "[a] waiver of ***Miranda*** warnings also serves to waive one's Sixth Amendment right to counsel.").

Further, "[n]o per se rule automatically renders invalid a waiver of constitutional rights based on mental disease or deficiency." ***Commonwealth v. Cox***, 686 A.2d 1279, 1287 (Pa. 1996) (citing ***Commonwealth v. Bracey***, 461 A.2d 775 (Pa. 1983)). "[A] person with mental illness including a history of hallucinations and delusions may be capable of waiving her constitutional rights." ***Bracey***, 461 A.2d at 782, n.7. "Thus, in the suppression realm, the focus is upon police conduct and whether a knowing, intelligent, and voluntary waiver was effected based on a totality of the circumstances, which may include consideration of a defendant's mental age and condition, low IQ,

limited education, and general condition." ***Commonwealth v. Sepulveda***,

55 A.3d 1108, 1136–37 (Pa. 2012).

Here, the trial court addressed this issue as follows:

Appellant asserts that this [c]ourt erred when it denied [Appellant's] motion to suppress, and reasoned that [Appellant's] confession was a knowing, intelligent and voluntary confession, was not a violation of her Sixth Amendment and Article I Section 9 rights and thus was admissible. Appellant's pretrial motion to suppress was filed on February 5, 2024, and this [c]ourt held a suppression hearing on February 21, 2024. Thereafter, on March 1, 2024, this [c]ourt issued a three-page order denying Appellant's motion to suppress and thoroughly explain[ed] its reasoning for denying Appellant's motion to suppress. Specifically, it was found as follows:

1. On June 16, 2022, as part of the initial investigation into the death of [Victim], Corporal Wilson of the Susquehanna Township Police Department interviewed [Appellant] after advising her of her ***Miranda*** rights, both orally and in writing.[6]

---

[6] ***See*** N.T., Pretrial Hr'g, 2/21/24, at 11; Com. Exh. 1 (Susquehanna Township Police Department ***Miranda*** Warnings Waiver Form 6/16/22). The June 16, 2022 Susquehanna Township Police Department Miranda warnings waiver read, in relevant part, as follows:

You have the right to remain silent. Anything you say can and will be used against you in a court of law.

You have the right to an attorney. If you cannot afford an attorney, one will be provided to you without charge prior to questioning.

Knowing these rights, do you wish to speak to me without the presence of an attorney? Yes

s/ Evelyn Zigerelli

*(Footnote Continued Next Page)*

2. [Appellant] corrected her name on the waiver form and signed it.[7]

3. [Appellant] was coherent and never invoked her right to silence or counsel during the seven hours in the police interview room. There were no inculpatory statements made by her.

4. On the audio and video tape, it was clear that the following exchange took place:

> CPL. WILSON: "OK, stand up, you're under arrest. Criminal Homicide. Hands behind your back, please. The car is out back ... Do you have any questions for me?"

> EVELYN HENDERSON: "No, do I still get a public defender?"

> CPL. WILSON: "You'll have to apply for one, correct, yeah, but yes, you'll definitely get an attorney. But uh so you're going ... You searched her before?"

5. On June 21, 2022, Corporal Wilson went to see [Appellant] at the Dauphin County Prison after he was present at the autopsy earlier that day. She was brought to an interview room at the prison, and she was asked if she obtained a lawyer. [Appellant] replied that someone from the prison was helping her fill out paperwork, and this person told her that she did not qualify for a public defender.

6. [Appellant] was then advised of her *Miranda* rights, the form was reviewed and signed by her. Where it's stated on the written form "Knowing these rights, do you wish to

_____

6/16/22 8:58 AM[.]

*Id.*

[7] *See* N.T., Pretrial Hr'g, 2/21/24, at 11; Com. Exh. 1 (Susquehanna Township Police Department Miranda Warnings Waiver Form 6/16/22).

speak to me without the presence of an attorney?" [Appellant] wrote "Yes."[8]

7. The interview was not recorded; however, Corporal Wilson testified that [Appellant] was told that her original story did not match the evidence. [Appellant] tells them she can't have a jury trial, and she was told that the only way they would agree to a plea bargain with the district attorney's office was if she came forth with what truly happened, to avoid a jury trial. After sitting quietly for about five to ten minutes, she proceeded with her confession.

8. In *Edwards v. Arizona*, 451 U.S. 477 (1981), it was held that an accused "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." *Id.* at 484-85.

9. The *Edwards* rule was clarified in *Davis v. United States*, 512 U.S. 452 (1994) by holding that the

---

[8] *See* N.T., 2/21/24, at 19-22; Com. Exh. 4 (Susquehanna Township Police Department Miranda Warnings Waiver Form 6/21/22). The June 21, 2022 Susquehanna Township Police Department Miranda warnings waiver read, in relevant part, as follows:

You have the right to remain silent. Anything you say can and will be used against you in a court of law.

You have the right to an attorney. If you cannot afford an attorney, one will be provided to you without charge prior to questioning.

Knowing these rights, do you wish to speak to me without the presence of an attorney? Yes

s/ Evelyn Henderson

6/21/22 10:55 AM[.]

*Id.*

"determination of whether the right to counsel was invoked by the accused is an 'objective inquiry.'" ***Id.*** at 458-59 (The remark — "Maybe I should talk to a lawyer" — was not a request for counsel). ***See McNeil v. Wisconsin***, 501 U.S. 171, 178 (1991) (The likelihood that a suspect will wish counsel to be present is not the test for the applicability of ***Edwards***).

10. [Appellant] never made a request for counsel during any of the actual interrogations by Corporal Wilson on either June 16 or June 21, 2022. On each occasion, she was provided ***Miranda*** warnings and wrote "Yes" to the question on the waiver form that she wished to speak with the officer without the presence of an attorney.

11. The statement by [Appellant] after the first interrogation was already concluded was only a question by her relating to her arrest. It does not meet the objective standard of a statement that a reasonable police officer would understand to be that he could not interview her at a later date.

12. At no time during the interrogation while in the prison on June 21, 2022, did [Appellant] make any request for counsel.

13. The police are not required under ***Edwards*** to follow up or ask clarifying questions as to whether a suspect wants an attorney prior to the interrogation. ***Davis***, ***supra***. There is no requirement that the public defender's office be contacted by the police, especially when [Appellant] indicated that she had been told she did not qualify.

14. The police did not make any inducements in order for [Appellant] to not seek the assistance of counsel during her interrogation on June 21, 2022[,] and to execute a waiver. ***Cf. Commonwealth v. Gibbs***, 553 A.2d 409 (Pa. 1989).

15. Under the totality of the circumstances, the [Appellant's] confession was knowing, intelligent and voluntary, along with her waiver of her ***Miranda*** rights. ***See***, ***e.g.***, ***Commonwealth v. Hubble***, 504 A.2d 168 (Pa. 1986).

Court Order Denying Motion for Suppression, 3/1/24, ¶¶ 1-15.

In summary, it was significant that at the time of the interview on June 21, 2022, Appellant executed the written waiver form after being advised of her *Miranda* rights. She was sophisticated with all her wits about her. It was five days after her arrest. Someone from the public defender's office had already spoken to her in the jail. It was [Appellant's] choice to verbally confess and then write out on paper that "I set the fire with . . . match[es]." That [Victim] cried out "help me, Evy", and [Appellant] stood there and watched [Victim] burn.

The police were not required to be [Appellant's] advocate to arrange for counsel before [Appellant] decided to waive after being advised of her *Miranda* rights. Appellant had five days to obtain counsel. There was no impediment on the police approaching [Appellant] again after the autopsy, and there was no pressure exerted upon [Appellant] to waive her right to counsel.

Trial Ct. Op., 8/21/24, at 4-6 (some formatting altered).

After review, we agree with the trial court's conclusion, which is supported by the record. *See Briggs*, 12 A.3d at 320-21; *Jones*, 988 A.2d at 654. The record reflects that the police provided Appellant with her *Miranda* rights prior to speaking with her on June 16, 2022, and we agree with the trial court that Appellant did not assert her right to counsel by asking whether she would be entitled to a public defender. *See* Trial Ct. Op., 8/21/24, at 5. Appellant's statement was not such that a reasonable police officer would understand it to be a request for an attorney. *Champney*, 161 A.3d at 273 (citing *Davis*, 512 U.S. at 461). Additionally, Appellant answered questions coherently, exhibited no signs of a mental health crisis, and gave no indication that she could not understand what was asked of and what was said to her. *See* N.T., Pretrial Hr'g, 2/21/24, at 11-13.

- 15 -

Further, the record reflects that after the autopsy had been conducted and Appellant had been charged, police returned to speak with Appellant on June 21, 2022. Because charges had been filed against her, Appellant's right to counsel under the Sixth Amendment to the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution had attached. *See Hannibal*, 156 A.3d at 212; *Keaton*, 45 A.3d at 1065. However, once again, the police informed Appellant of her *Miranda* rights, including her right to counsel, and Corporal Wilson asked if Appellant had retained counsel. *See* N.T., Pretrial Hr'g, 2/21/24, at 18-21, 22; Com. Exh. 4 (Susquehanna Township Police Department *Miranda* Warnings Waiver Form 6/21/22). After Appellant responded that she had not retained counsel, the police asked if Appellant would be willing to speak with the police without an attorney present. *See id.* at 19, 22; Com. Exh. 4 (Susquehanna Township Police Department *Miranda* Warnings Waiver Form 6/21/22).

Ultimately, after police provided Appellant with *Miranda* warnings, Appellant executed a second waiver of her rights which included a waiver of her right to counsel. *See* N.T., Pretrial Hr'g, 2/21/24, at 19, 22; Com. Exh. 4 (Susquehanna Township Police Department *Miranda* Warnings Waiver Form 6/21/22). Although police reiterated that Appellant had the right to counsel, she did not invoke her right to counsel, and she agreed to speak to the police without an attorney present. *See* N.T., Pretrial Hr'g, 2/21/24, at 19, 22; Com. Exh. 4 (Susquehanna Township Police Department *Miranda* Warnings Waiver Form 6/21/22). Corporal Wilson testified that Appellant understood her rights,

- 16 -

engaged in coherent conversation, responded coherently and logically to questions, and did not exhibit any signs of a mental health issue. *See* N.T. Pretrial Hr'g, 2/21/24, at 19-21. Additionally, Appellant never invoked her right to counsel or her right to remain silent. *See id.* at 21; *see also* ***Champney***, 161 A.3d at 272–73. Thereafter, Appellant provided a knowing and voluntary inculpatory statement. *See* N.T. Pretrial Hr'g, 2/21/24, at 21-22; Com. Exh. 4 (Susquehanna Township Police Department ***Miranda*** Warnings Waiver Form 6/21/22). In sum, the record reflects that although Appellant was informed of her rights before the interview on June 21, 2022, Appellant did not invoke her right to counsel. *See* N.T., Pretrial Hr'g, 2/21/24, at 21-22; Com. Exh. 4 (Susquehanna Township Police Department ***Miranda*** Warnings Waiver Form 6/21/22). Instead, Appellant agreed in writing to speak to Corporal Wilson without an attorney present, and she provided a knowing, voluntary, and intelligent waiver of her right to counsel. *See* N.T., Pretrial Hr'g, 2/21/24, at 19-22; Com. Exh. 4 (Susquehanna Township Police Department ***Miranda*** Warnings Waiver Form 6/21/22). Accordingly, Appellant waived her right to counsel under the Sixth Amendment to the U.S. Constitution and Art. 1, Section 9 of the Pennsylvania Constitution. *See* ***Rawls***, 256 A.3d at 1234; ***Garcia***, 2024 WL 4624682, at *7; ***Keaton***, 45 A.3d at 1065. For these reasons, we agree with the trial court that Appellant's statements to police were obtained legally, and therefore there is no basis to suppress Appellant's statements. *See **Rawls***, 256 A.3d at 1234. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>05/22/2025</u>